STATE OF NEBRASKA, APPELLEE, V. CECIL M. BYRD, APPELLANT.
435 N.W.2d 898

Filed February 17, 1989.   No. 88-221.

Clyde F. Starrett for appellant.

Robert M. Spire, Attorney General, and Jill Gradwohl Schroeder for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

GRANT, J.

This is an appeal from the district court for Red Willow County. The defendant-appellant, Cecil M. Byrd, was charged by information with distributing, delivering, or dispensing marijuana in violation of Neb. Rev. Stat. § 28-416(1)(a) (Reissue 1985), a Class III felony. Defendant pled not guilty, and the case was tried before a jury. On October 14, 1987, the jury returned a verdict of guilty. Defendant's motion for new trial was overruled, and he was later sentenced to 1 year's imprisonment. Defendant timely appealed. On appeal, defendant assigns as error the trial court's actions in (1) failing to dismiss the complaint for lack of proof by the State, (2) refusing two of defendant's proposed jury instructions regarding entrapment, (3) failing to grant defendant's motion for a mistrial, and (4) imposing an excessive sentence. We affirm.

With regard to defendant's first assignment of error, we have held that in determining the sufficiency of the evidence to

sustain a conviction, it is not the province of the Supreme Court to resolve conflicts in the evidence, pass on the credibility of witnesses, determine the plausibility of explanations, or weigh the evidence. Such matters are for the finder of fact, and the verdict must be sustained if, taking the view most favorable to the State, there is sufficient evidence to support it. *State v. Marrs*, 230 Neb. 977, 434 N.W.2d 336 (1989).

Taking the view of the evidence most favorable to the State, the record shows that on December 3, 1986, McCook Police Detective Isaac Brown telephoned Tracy Schuppan and asked Schuppan to meet him and Detective Bill Callister at the McCook police station. When Schuppan met with the detectives on December 4, Brown and Callister told Schuppan that they were investigating him for attempted distribution of marijuana and asked Schuppan if he would tell them about people he knew personally to be in the drug trafficking business in the McCook area. Schuppan discussed a number of people he knew to be drug traffickers and agreed to work with the detectives in an undercover capacity. In return, the detectives stated that they would report Schuppan's cooperation to the prosecuting attorney.

Schuppan told Brown and Callister that he felt he could purchase drugs from Kurke Curl. Schuppan telephoned Curl on the morning of December 4 and asked if Curl could sell him a gram of cocaine and half an ounce of marijuana. Schuppan arranged to meet Curl at noon at Curl's place of business in McCook.

At 11 a.m., Schuppan informed Callister about the noon meeting. Schuppan met Callister and Brown at 11:30 at a McCook motel to discuss the drug transaction. Brown then searched Schuppan's vehicle for controlled substances. Schuppan was strip-searched and wired with electronic surveillance equipment. The detectives gave Schuppan $180 to finance the transaction and followed him, at a distance, to Curl's shop. Curl did not show up at noon, so Schuppan and the detectives went back to the motel, where Schuppan returned the $180 and the wire was removed.

Later that day, Schuppan arranged to meet Curl at 5:30 p.m. at Curl's shop. At 5:15 p.m., Schuppan met Callister and

Brown at the motel. Schuppan and his vehicle were again searched, and Schuppan was again wired with the electronic surveillance equipment.

Defendant and Curl were present in Curl's shop when Schuppan entered at 5:30 p.m. Curl told Schuppan that he had not contacted anybody yet, but needed the money up front to pick up the cocaine and marijuana. Schuppan testified that defendant said he was going to pick up his supply of marijuana and meet Schuppan and Curl back at the shop. The three men agreed to meet again at 6 p.m. Schuppan gave Curl the $180 and went back to the motel with Callister to wait until 6 p.m.

Curl was present when Schuppan returned to the shop at 6:05 p.m. Curl went out to his car, returned, and delivered 1 gram of cocaine to Schuppan. Curl then returned $60 to Schuppan. Defendant then entered the shop and apologized for being late. Schuppan asked defendant if he had his marijuana with him. Defendant stated that he did and went out to his car. He returned and sold Schuppan 6.3 grams of marijuana for $40. Defendant said to Schuppan that "everyone else he sold it to liked it and always came back for more." Defendant also told Schuppan that he could get Schuppan a half ounce of cocaine for $1,500. Schuppan's conversations with defendant and Curl were monitored by Callister over the surveillance wire, but the tape was not admitted into evidence.

Schuppan returned to the motel, gave Callister the cocaine and marijuana, and returned the remaining $20. The detectives again searched Schuppan and his vehicle and removed the surveillance equipment.

The jury, in returning a verdict of guilty, resolved any conflicts in the evidence in favor of the State. The evidence, when viewed most favorably to the State, is sufficient to establish beyond a reasonable doubt that defendant intentionally distributed, delivered, or dispensed marijuana to Schuppan on December 4, 1986. Defendant's first assignment of error is without merit.

In his second assignment of error, defendant contends the trial court improperly instructed the jury on the defense of entrapment, in that the trial court refused to give two of the three instructions proposed by defendant. Defendant raised the

affirmative defense of entrapment, and testified at trial that he had gone to Curl's shop on December 4 to get an estimate on some automobile upholstery work. Defendant admitted that he sold marijuana to Schuppan on the date in question, but denied having dealt in drugs or marijuana before. He also denied having used marijuana or drugs and stated that he would not have sold the marijuana if he had not been approached by Schuppan.

Defendant proposed three jury instructions pertaining to entrapment. Proposed instruction No. 1 explained the entrapment defense but did not address the matter of predisposition of the defendant. The trial court properly refused to give this proposed instruction. Proposed instruction No. 2 failed to explain that the jury could consider evidence of the conduct of the defendant and acts of a similar nature in determining whether defendant was predisposed to commit the crime, and was properly refused, particularly in light of defendant's statement as to his prior sales of marijuana, which is relevant to the issue of his predisposition. Defendant's proposed instruction No. 3 was nearly identical to NJI 14.34, which was given by the court, and was submitted by the defendant as an alternative to his proposed instructions Nos. 1 and 2.

Entrapment is governmental inducement of one to commit a crime not contemplated by the individual, in order to prosecute that individual for commission of a criminal offense. *State v. Swenson*, 217 Neb. 820, 352 N.W.2d 149 (1984); *State v. Jones, ante* p. 47, 435 N.W.2d 167 (1989). It occurs when the criminal intent or design originates with governmental officials, who implant in the mind of an innocent person the disposition to commit a criminal offense and induce criminal conduct in order to prosecute the criminal offense so induced. *Swenson, supra*. Nebraska has adopted the "origin of intent" test for entrapment. Under this test, a defendant has been entrapped if (1) an agent of the State has induced the defendant to commit the offense charged, and (2) the defendant's predisposition to commit the criminal act was such that the defendant was not otherwise ready and willing to commit the offense on any propitious opportunity. *Swenson, supra; Jones,*

*supra.* The test focuses on the defendant's predisposition to commit the crime charged. *Swenson, supra.* When a defendant raises the defense of entrapment, the trial court must determine, as a matter of law, whether the defendant has presented sufficient evidence to warrant a jury instruction on entrapment. *Swenson, supra*; *Jones, supra.*

The trial court determined that there was sufficient evidence that the government had induced defendant to commit the crime to warrant an instruction on entrapment. The court gave NJI 14.34, which was proposed by defendant, and which has been specifically approved by this court. *State v. Bocian,* 226 Neb. 613, 413 N.W.2d 893 (1987); *State v. Lampone,* 205 Neb. 325, 287 N.W.2d 442 (1980). The jury was properly instructed on the issue of entrapment. Defendant's proposed instructions which were refused did not add anything not properly covered by the instruction given, and did not fully state the applicable law. Defendant's second assignment of error is without merit.

In his third assignment of error, defendant contends the trial court erred in failing to grant defendant's motion for a mistrial. A mistrial is properly granted when an event occurs during the course of a trial which is of such a nature that its damaging effect cannot be removed by proper admonition or instruction to the jury and would thus result in preventing a fair trial. The decision to grant a motion for mistrial is within the discretion of the trial court and will be upheld on appeal absent a showing of abuse of discretion. *State v. Fraser,* 230 Neb. 157, 430 N.W.2d 512 (1988).

Defendant's motion for mistrial was based on counsel's misunderstanding of the court's ruling in sustaining the State's objection to certain comments made by defendant's counsel during voir dire examination of prospective jurors. Defendant's counsel did not examine prospective jurors regarding the defense of entrapment because he thought the court had so ruled as to foreclose examination on that point. The voir dire examination itself was not recorded by a court reporter. The court did, however, conduct a hearing on the record outside the jury's presence immediately after voir dire examination with regard to the merits of the State's objection.

During the hearing, the attorneys and the trial judge stated

their recollections as to what happened during voir dire. The record indicates generally that defense counsel discussed the defense of entrapment, referring the prospective jurors to the nationally publicized criminal trial of automobile manufacturer John DeLorean. The prosecutor approached the bench and objected to counsel's comments on the DeLorean prosecution. The objection was sustained. Defense counsel then asked the court at the bench whether it would be improper to ask certain questions regarding entrapment. The court indicated that such questions would be proper, but counsel misunderstood the court to rule that the questions would not be allowed and, consequently, did not ask the questions. During the hearing, defense counsel moved for a mistrial, stating, "I know it would have made some difference to my voir dire because I intended to go into the matter of entrapment. And I thought that your ruling was that I couldn't . . . discuss the reason in the law for entrapment . . . ."

In the absence of a verbatim record on voir dire, we decline to consider defendant's assertion that the trial court erred in sustaining the State's objection to his references to the DeLorean case. While the voir dire proceedings were not recorded, the record before us shows that a hearing was held immediately after the voir dire examination was concluded. Both counsel and the judge stated, on the record, their versions of what had occurred. The versions disagreed as to what defense counsel actually said about the DeLorean matter and as to the substance of the court's ruling regarding the propriety of defendant's questions about entrapment. There also is a conflict in the record as to whether the State's objection to defendant's "DeLorean" remarks was made before or after defendant passed the jury for cause. The trial judge determined what was said during the voir dire, and, based on those determinations, his decision was correct. The record is incomplete and does not permit us to consider this assignment of error further. See *State v. Harris*, 205 Neb. 844, 290 N.W.2d 645 (1980).

Although defense counsel did not discuss the issue of entrapment with the jury panel, any possible damaging effect on the jury was removed when the court properly instructed the

jury on the defense of entrapment. Defendant was not prevented from having a fair trial, and the trial court did not abuse its discretion in overruling defendant's motion for mistrial.

Finally, defendant claims he received an excessive sentence and that his sentence was more severe than the sentences imposed on Kurke Curl and Brian Harris, who were convicted of similar offenses in Red Willow County and sentenced to probation. Defendant claims Curl and Harris received sentences of probation because they pled guilty and that he was "penalized for asking for a jury trial." Brief for appellant at 19. An accused should not receive a more severe sentence merely because he exercised his right to a jury trial. *State v. Winsley*, 223 Neb. 788, 393 N.W.2d 723 (1986).

In *State v. Guida*, 230 Neb. 961, 965, 434 N.W.2d 522, 526 (1989), however, we stated:

"[T]he issue in reviewing a sentence is whether the defendant in question received an appropriate sentence, not whether someone else received a lesser one. . . . Each defendant is unique; evidence as to each defendant's life, character, and previous conduct may be considered in determining the propriety of the sentence."

Unlike Curl and Harris, defendant's presentence investigation shows that defendant continued to exhibit behavioral problems even after his conviction for this incident.

In one incident, defendant, while intoxicated, became involved in an altercation with his estranged wife after breaking into her home. After the police arrived, defendant falsely informed them that the wife had drugs in her purse and stated to the officers that he and his wife had "smoked pot together in the house." That same night, defendant became involved in an altercation at a local bar that resulted in defendant's contacting the police department.

The probation officer who conducted defendant's presentence investigation reported that defendant's behavior since being arraigned for this offense "would suggest that he continues to experience difficulty in the use of alcohol and drugs, and that his conduct during any future probationary period would be the same." The probation office was unable to

verify several items concerning defendant's school, employment, and medical records. The trial judge himself described defendant's case as "marginal" and noted that defendant's conduct "would appear to be that of . . . a person who is addicted to drugs, primarily alcohol." Defendant showed no remorse for his actions.

The record shows that the trial court considered defendant's life, character, and previous conduct, and concluded defendant "deserve[d] the shortest sentence that can be given in this case, but [did] not deserve probation." An order denying probation and a sentence imposed within the statutorily prescribed limits will not be disturbed on appeal unless there has been an abuse of discretion. *State v. Masur*, 230 Neb. 620, 432 N.W.2d 815 (1988); *State v. Sutton, ante* p. 30, 434 N.W.2d 689 (1989).

The offense for which defendant was convicted is a Class III felony, punishable by a maximum of 20 years' imprisonment, a $25,000 fine, or both, and a minimum of 1 year's imprisonment. Defendant received the minimum sentence prescribed by statute, and the trial court did not abuse its discretion in denying probation.

Finally, we find it necessary to draw counsel's attention to Neb. Ct. R. of Prac. 5H (rev. 1988), which provides that "[u]nder no circumstances shall the clerk of the district court send to the Clerk of the Supreme Court contraband, drugs, firearms, or other weapons, unless specifically requested to do so by the Supreme Court." We direct that within 15 days of the release of this opinion, the State, through the office of the Red Willow County attorney, withdraw from the record State's exhibit 3, a baggie of marijuana, which the State offered and the trial court received into evidence.

The judgment of the trial court was correct in all respects and is affirmed.

AFFIRMED.