STATE OF NEBRASKA, APPELLEE, V. CHRISTOPHER F. VAN EGMOND,
APPELLANT.
448 N.W.2d 569

Filed November 22, 1989.   Nos. 88-1077, 88-1078.

S.J. Albracht for appellant.

Robert M. Spire, Attorney General, and Kenneth W. Payne for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

BOSLAUGH, J.

The defendant, Christopher F. Van Egmond, was charged in separate informations with conspiracy to distribute methamphetamine and possession of methamphetamine with

intent to distribute. The cases were consolidated for trial, and the jury returned a verdict of guilty on both counts. The defendant was sentenced to imprisonment for 3 to 5 years on each count, the sentences to run concurrently.

The defendant has appealed and contends that the trial court erred in failing to sustain his motion for a directed verdict of acquittal because the evidence sustained the defense of entrapment as a matter of law. The defendant stipulated that he had engaged in a conspiracy to distribute a controlled substance and that he had delivered methamphetamine on July 10, 1986, in Dakota County, Nebraska.

Entrapment is the governmental inducement of one to commit a crime not contemplated by the individual, in order to prosecute that individual for commission of a criminal offense. *State v. Byrd*, 231 Neb. 231, 435 N.W.2d 898 (1989); *State v. Jones*, 231 Neb. 47, 435 N.W.2d 167 (1989). It occurs when the criminal intent or design originates with governmental officials, who implant in the mind of an innocent person the disposition to commit a criminal offense and induce criminal conduct in order to prosecute the criminal offense so induced. *Byrd, supra*; *State v. Swenson*, 217 Neb. 820, 352 N.W.2d 149 (1984). When a person has no previous intent or purpose to violate the law, but does so only because he is induced to commit the act by law enforcement officers or agents, he is entitled to the defense of entrapment. *State v. Lampone*, 205 Neb. 325, 287 N.W.2d 442 (1980).

Nebraska has adopted the "origin of intent" test for entrapment. Under this test, a defendant has been entrapped if (1) an agent of the State has induced the defendant to commit the offense charged, and (2) the defendant's predisposition to commit the criminal act was such that the defendant was not otherwise ready and willing to commit the offense on any propitious opportunity. *Byrd, supra*; *Jones, supra*; *Swenson, supra*. The State has the burden of proving beyond a reasonable doubt that the defendant was not entrapped. *Jones, supra*.

The record shows that on July 10, 1986, the defendant conspired to deliver and did deliver methamphetamine to Allen Keck, a confidential informant for the Nebraska State Patrol, in Dakota County, Nebraska.

The defendant and Keck first met in March 1986, while they were patients at the Valley Hope drug treatment center in O'Neill, Nebraska. They became acquainted during group therapy sessions and exchanged addresses and telephone numbers at Valley Hope. Keck had been addicted to methamphetamine and was a patient at Valley Hope because he was trying to reach a plea agreement with federal prosecutors regarding his indictment for approximately seven drug- and weapons-related offenses. In December 1985, Keck pled guilty to two counts of felony conspiracy, pursuant to the plea agreement, and wanted to do anything he could to lessen his potential sentences for the federal convictions.

Keck was a contractor and also was active in racing horses. After Keck left Valley Hope, he tried to renew his racing license in Nebraska, but failed to mention on the renewal application that he was under federal indictment. Accordingly, the Nebraska State Racing Commission decided to revoke Keck's license. Facing the loss of his license, Keck met with State Patrol Officer Bill Schlachter in Grand Island during May 1986 and offered to help the State Patrol investigate the sale of drugs at Nebraska racetracks.

Keck testified that Schlachter agreed to intervene regarding Keck's racing license if Keck would "go ahead and help them clean up some of that mess up there as far as the drugs on the race track." Keck was directed to meet with the State Patrol in Omaha.

Keck met with State Patrol officers and a member of the racing commission in Omaha in mid-June 1986. The purpose of the meeting was to determine whether Keck would work with the State Patrol and whether he would be valuable as an informant. Keck signed an informant's agreement on June 19, 1986, and was assigned to work with State Patrol Investigator Robert Shelbourn, a drug investigator.

Shelbourn testified that there was no ongoing investigation of the defendant when Keck signed the informant's agreement and that the State Patrol intended to use Keck as an informant on and around racetracks in Dakota County and Columbus. No promises were made to Keck on June 19, except that the State Patrol would notify the U.S. Attorney's office and the

federal court of Keck's cooperation. Keck was not paid a salary and began working as an informant only after signing the agreement on June 19.

Approximately 1 week later, Keck and Shelbourn had a casual conversation during which Shelbourn said that he was from Plainview, Nebraska. Keck stated that he knew someone from Plainview (the defendant) and that he had gone through drug treatment with the defendant. Shelbourn asked Keck if he thought he could buy any drugs from the defendant. Keck believed he could because during treatment the defendant had told Keck that he had access to methamphetamine. Keck also knew that the defendant was in "pretty poor" financial shape and did not think he would have any problems buying drugs from the defendant.

On July 1, 1986, Keck telephoned the defendant and went to the defendant's home near Plainview that afternoon. This was the first time Keck had seen the defendant since treatment at Valley Hope. During a conversation in the defendant's living room, Keck asked if the defendant could get any methamphetamine, or "crank." The defendant and Keck went outside to a machine shed, where Keck again asked the defendant if he could get any crank. The defendant said yes, produced a small bag of crank, snorted some, and asked Keck if he wanted any. Keck said he was not going to "do it," but wanted to sell it. The defendant told Keck that he would obtain a quarter ounce and that he would return around 7 or 8 p.m.

Keck notified Shelbourn of his arrangement with the defendant. Keck returned to the defendant's residence on the evening of July 1. He and the defendant went to the shed. The defendant gave Keck a quarter ounce of methamphetamine and told Keck it would cost $500. Keck then gave the defendant $500, and the two men walked to Keck's truck.

Keck told the defendant that he would "get rid of this" crank and would call the defendant when he needed more. They agreed that the defendant would obtain a quarter ounce of methamphetamine if Keck telephoned and said he was "working on a one horse trailer and couldn't get away."

A few days later, Keck telephoned the defendant from South Sioux City and mentioned the "one horse trailer." During this

conversation, the defendant indicated that he was coming to South Sioux City to take his wife to the hospital for back surgery and would deliver a quarter ounce of methamphetamine to Keck at Keck's home.

The defendant arrived at Keck's residence on the afternoon of July 10. Keck asked him if he had the crank. The defendant said that he did and that he had brought a half ounce because the supply was running low. The defendant left the residence and returned with a white envelope containing a quarter ounce of crank. Keck paid the defendant $500 for the methamphetamine and $50 for travel expenses.

The July 1 and July 10 transactions were monitored by the Nebraska State Patrol. On both occasions, the defendant informed Keck of the price of the drug. Keck testified that he did not threaten the defendant in any way and that the defendant did not resist or seem reluctant to sell the methamphetamine to Keck.

The defendant called no witnesses and did not testify at the trial.

Although the defendant argues that his motion to dismiss should have been sustained because there was "not a scintilla of evidence that the Defendant had any predisposition to violate the law by the delivery of Methamphetamines," the record supports the jury's finding that the State Patrol did not induce the defendant to sell methamphetamine. Rather, the informant merely inquired of the defendant as to whether the informant could purchase the drug. This inquiry was met with an immediate positive response on two occasions. On the second occasion, the defendant even offered to supply Keck with twice as much methamphetamine as had been agreed to.

Furthermore, by agreeing to sell the drug upon the simple request of an informant, the defendant demonstrated that he was willing to commit the offense on any propitious opportunity. The jury resolved the issue of entrapment against the defendant, and the verdicts are supported by the evidence.

Although the defendant appears to argue that the State Patrol's use of an informant was unfair, especially because the informant had participated in a drug treatment program with the defendant, we have stated that

law enforcement officers are not precluded from utilizing artifice and stratagem, such as the use of decoys or undercover agents, to apprehend a person engaged in a criminal enterprise, provided that they merely afford opportunities or facilities for the commission of an offense by one already predisposed or ready to commit it. *State v. Lampone*, 205 Neb. 325, 328, 287 N.W.2d 442, 444 (1980). The defendant's assignments of error are without merit.

The judgment of the district court is affirmed.

AFFIRMED.