STATE OF NEBRASKA, APPELLEE, V. STEVEN L. STAHL, APPELLANT.

482 N.W.2d 829

Filed April 17, 1992.    No. S-90-709.

Thomas L. Spinar for appellant.

Don Stenberg, Attorney General, and Barry Waid for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

WHITE, J.

This is a criminal case in which the State charged the defendant-appellant, Steven L. Stahl, with knowingly or intentionally manufacturing, distributing, delivering, dispensing, or possessing with the intent to manufacture, distribute, deliver, or dispense a controlled substance, namely, marijuana. See Neb. Rev. Stat. §§ 28-416(1)(a) and 28-405(c)(10) [Schedule I] (Reissue 1988). The defendant pled not guilty and was tried and convicted by a jury of the offense charged in the Saline County District Court. The trial judge sentenced the defendant to 1 year in prison, with 8 days' credit for time spent in the county jail, and ordered him to pay the costs of the action. This appeal followed.

## FACTUAL BACKGROUND

In late 1989, Robin Heyen, an investigator with the Saline

County Sheriff's Department, became involved in an undercover narcotics investigation. During the course of the investigation Heyen convinced a suspect from whom several "control buys" were made, James Barber, to cooperate with the investigation in exchange for Heyen's promise to inform the county attorney of his assistance. Pursuant to this "understanding," Barber was to introduce Heyen to other known or suspected drug users and dealers.

Heyen first met the defendant at a social gathering hosted by Barber in mid-February 1990. The defendant was accompanied by his girl friend, Terri Ockinga, and both smoked some marijuana provided by another guest at the party. Though Ockinga testified that she observed Heyen smoking marijuana, Heyen testified that he only simulated doing so in order to dispel any suspicions that he was a police officer. When the topic of conversation at the party turned to illegal substances, the defendant stated that he had some connections and could obtain drugs quite easily.

On February 27, 1990, Heyen and Barber visited the defendant at his residence in Wilber, Nebraska, and asked him if he could find them some marijuana. The defendant identified an "Uncle Les" in Omaha as a potential source of marijuana. The defendant told them that he would check around and contact them later. At that point Heyen and Barber drove back to Barber's trailer in Crete, Nebraska.

Later that evening the defendant and Ockinga arrived at Barber's trailer and asked to use the phone to call Les. The defendant told Barber that he had a credit card number to which he could bill any long-distance calls. At one point, Heyen overheard a conversation during which the defendant discussed various types, prices, and quantities of drugs, including "Thai-stick" and "acid." The defendant informed Heyen that he would go to Omaha to purchase drugs if any were available. Heyen asked the defendant to purchase some for Heyen as well, and the defendant said he would. The defendant also described the nature of a Thai-stick, a sliver of bamboo wrapped with a very potent form of marijuana, and told him that they were $14 or $15 each and that marijuana was $35 or $40 per quarter ounce.

Several hours later, either the defendant or Ockinga made another call, from which it was determined that no drugs were available that night. The caller indicated, however, that the individual who was called would call back the next day if the situation changed. The defendant instructed Heyen and Barber that if they received such a call, the person would probably speak in code and that they should contact him if it sounded like drugs were available.

The next day Barber received a phone call at his trailer from a person who told him that "the tires are in." Barber informed Heyen as to the contents of the call, and the two drove to the defendant's home in Wilber to relay the message. Upon hearing the message, the defendant opined that the caller had either Thai-stick or marijuana. He told Heyen and Barber that he and Ockinga were going to drive to Omaha to make a purchase and asked whether Heyen wanted anything. Heyen requested a quarter ounce of marijuana or three Thai-sticks, whichever was available, and asked the defendant how much it would cost. The defendant said $40 would be enough, and Heyen gave him that amount.

Following the meeting in Wilber, Heyen and Barber returned to Crete. Later that evening, the defendant arrived at Barber's trailer and tossed Heyen a small bag. The defendant said the bag contained a quarter ounce of "good weed," but warned Heyen that it was "creeper." In the vernacular of the drug trade, "creeper" apparently describes marijuana which takes a longer time before producing the desired sensation. Shortly after this encounter Heyen left the trailer and went to the Saline County Sheriff's Department, where he placed the bag in an evidence locker.

At trial, Heyen expressed his opinion that the substance in the bag was marijuana. A forensic drug chemist employed by the Nebraska State Patrol concurred in that opinion. The chemist further testified that the bag contained just under a quarter ounce of marijuana, a "common unit" in which the substance is sold.

## ASSIGNMENTS OF ERROR
On appeal, the defendant argues that the trial court erred in

(1) overruling his foundational objections to certain expert testimony, (2) refusing to submit to the jury his proposed instruction regarding entrapment, and (3) imposing an excessive sentence; the defendant also urges as grounds for reversal (4) the insufficiency of the evidence to support a conviction and (5) the violation of his right to effective assistance of counsel. We affirm.

## THE EXPERT TESTIMONY

For his first assignment of error the defendant argues that the trial court erred in allowing, over his objection, testimony by Officer Heyen that the substance in the bag tossed to him by the defendant was marijuana and that he knows how long "THC" remains in a person's blood. The defendant also objects to the admission of testimony by the forensic drug chemist that a quarter ounce is a common unit in which marijuana is sold.

Whether a witness is qualified as an expert is a preliminary question for the trial court. Nev. Evid. R. 104(1) (Neb. Rev. Stat. § 27-104(1) (Reissue 1989)). A trial court's ruling regarding a witness' qualification as an expert will be upheld unless such ruling is clearly erroneous. *State v. Reynolds*, 235 Neb. 662, 457 N.W.2d 405 (1990).

A person may qualify as an expert by virtue of either formal training or actual practical experience in the field. Neb. Evid. R. 702 (Neb. Rev. Stat. § 27-702 (Reissue 1989)); *State v. Loveless*, 209 Neb. 583, 308 N.W.2d 842 (1981). In *State v. Hoxworth*, 218 Neb. 647, 358 N.W.2d 208 (1984), this court held that the trial court properly admitted a police officer's testimony that a substance seized pursuant to a search warrant was marijuana. Though the officer had no experience in botany and knew little about the scientific tests used to identify marijuana, he did have 9 years' experience in law enforcement, during which time he learned " 'what it looks like and what the seeds look like.' " *Id.* at 650, 358 N.W.2d at 210. The officer had also attended approximately 50 hours of state-sponsored training which included instruction in the various properties of marijuana. Citing § 27-702 and noting that a field test performed on the substance with a "narc kit" corroborated the officer's opinion, the court found no error in admitting the

testimony.

Here, Officer Heyen testified to receiving approximately 20 hours of training in drug identification and illegal drugs through the Nebraska Law Enforcement Training Center and the Lincoln Police Academy. He also received 100 hours of additional instruction in criminal investigation and evidence, including training in drug identification, during the course of his career. Further, Officer Heyen participated in two undercover drug investigations and also acted as coordinator of all state drug control efforts for the Nebraska National Guard prior to joining the Saline County Sheriff's Department. Officer Heyen possesses as much or more formal training and practical experience in identifying marijuana as did the officer in *Hoxworth*. Given this background and the forensic chemist's corroboration of his opinion, the trial court did not err in admitting Officer Heyen's testimony regarding the nature of the substance in the bag.

Much the same analysis applies with regard to Officer Heyen's testimony regarding THC. "THC" is an abbreviation for tetrahydrocannabinol, an active ingredient in marijuana. At trial, the State asked Officer Heyen whether he submitted to a drug test after February 27, 1990. Officer Heyen responded that he tested negative for THC on March 15. The State then asked if Officer Heyen knew how long THC remains in a person's blood. After defense counsel interposed a foundational objection, the State established that, as drug enforcement coordinator for the Nebraska National Guard, Officer Heyen received training in drug testing processes from a qualified examiner. When the State repeated the original question, the defendant again objected. The defendant contends that the trial court erred in overruling the objection and admitting Officer Heyen's testimony that, based upon various factors, THC can stay in a person's system for anywhere from 1 week to 30 days.

Though this is a closer question, the trial court was not clearly erroneous in concluding that Officer Heyen's specific training in drug testing processes, combined with his extensive experience as a law enforcement officer in the area of illegal narcotics, sufficiently qualified him to testify as he did.

Further, it is difficult to see how the testimony prejudiced the defendant. The negative test result does not necessarily bolster Officer Heyen's claim that he only simulated smoking marijuana. The test occurred more than 2 weeks after the social gathering at Barber's trailer, and thus, by Officer Heyen's own testimony, any THC in his system from actually ingesting the drug could have dissipated by then. " 'Harmless error exists in a jury trial of a criminal case when there is some incorrect conduct by the trial court which, on review of the entire record, did not materially influence the jury in a verdict adverse to a substantial right of the defendant.' " *State v. Coleman*, 239 Neb. 800, 814, 478 N.W.2d 349, 358 (1992), quoting *State v. Watkins*, 227 Neb. 677, 419 N.W.2d 660 (1988). The trial court's admission of Officer Heyen's testimony regarding THC does not constitute reversible error.

The defendant next contends that the trial court erred in allowing the forensic chemist to testify that a quarter ounce is a common unit in which marijuana is sold. Earlier in the trial, however, Officer Heyen testified, without objection, to the exact same fact. Thus, even if the chemist was unqualified to offer the challenged testimony, its admission is harmless error. " 'If properly admitted evidence exists to establish that which improperly admitted evidence also establishes, the error in receiving the inadmissible evidence is not grounds for reversal.' " *State v. Carter*, 226 Neb. 636, 644, 413 N.W.2d 901, 906 (1987), quoting *State v. Klingelhoefer*, 222 Neb. 219, 382 N.W.2d 366 (1986). The defendant's first assignment of error is without merit.

## JURY INSTRUCTIONS

For his second assignment of error the defendant challenges the trial court's choice of jury instructions on the issue of entrapment. The trial court instructed the jury pursuant to NJI 14.34. The defendant requested a similar instruction based upon a proposed change in the Nebraska Jury Instructions entrapment instruction drafted by the Nebraska Supreme Court Committee on Criminal Practice and Procedure. The defendant argues that the proposed instruction is more comprehensible to a jury because it uses the phrase "already

willing" rather than "predisposition" in reference to the defendant's attitude toward committing the crime proposed by government agents.

Generally, a trial court retains discretion in the wording of jury instructions. *State v. Ring*, 233 Neb. 720, 447 N.W.2d 908 (1989); *State v. Donhauser*, 231 Neb. 114, 435 N.W.2d 186 (1989). However, we have held that whenever an instruction from the Nebraska Jury Instructions is applicable and, from a consideration of the facts and prevailing law, the trial court determines that an instruction on a particular subject is appropriate, the instruction in the Nebraska Jury Instructions should be used. *State v. Stueben, ante* p. 170, 481 N.W.2d 178 (1992); *State v. Dush*, 214 Neb. 51, 332 N.W.2d 679 (1983). Cf. *State v. Bartholomew*, 212 Neb. 270, 322 N.W.2d 432 (1982) (whenever an instruction in the Nebraska Jury Instructions is applicable, that instruction *shall* be used).

We have specifically approved the use of NJI 14.34. *State v. Byrd*, 231 Neb. 231, 435 N.W.2d 898 (1989); *State v. Bocian*, 226 Neb. 613, 413 N.W.2d 893 (1987); *State v. Lampone*, 205 Neb. 325, 287 N.W.2d 442 (1980). Moreover, in asserting that his proposed instruction is clearer than NJI 14.34, the defendant ignores the fact that the present instruction states that no inducement occurs if "the defendant was predisposed *or ready* to commit the act . . . ." (Emphasis supplied.) The defendant's proposed instruction adds nothing not properly covered by the instruction given. Therefore, the defendant's second assignment of error is without merit.

## SUFFICIENCY OF THE EVIDENCE

Next, the defendant contends that the evidence is insufficient to support a verdict beyond a reasonable doubt that he was not entrapped. Specifically, the defendant argues that the record is "completely devoid of any evidence tending to show that the defendant was predisposed to sell marijuana." Brief for appellant at 15.

Entrapment " 'is in the nature of an affirmative defense,' " and thus the burden of going forward with evidence of governmental inducement is on the defendant. *State v. Parks*, 212 Neb. 635, 638, 324 N.W.2d 673, 676 (1982), quoting *State v.*

*Ransburg*, 181 Neb. 352, 148 N.W.2d 324 (1967). It is for the trial court to initially determine whether the defendant has produced sufficient evidence to give rise to the defense. *Parks, supra*. The defendant need only adduce " 'more than a scintilla' " of evidence to satisfy this initial burden. (Emphasis omitted.) *Id.* at 638, 324 N.W.2d at 676, quoting *United States v. Wolffs*, 594 F.2d 77 (5th Cir. 1979). In this case the trial court determined that sufficient evidence existed to raise the defense of entrapment. We need not and therefore do not address the correctness of that determination in this appeal. Cf. *State v. Swenson*, 217 Neb. 820, 352 N.W.2d 149 (1984).

When the defendant produces sufficient evidence to raise the defense, the question of entrapment becomes one of fact for the jury. *Parks, supra*. The burden is on the State to prove beyond a reasonable doubt that the defendant was not entrapped. *State v. Van Egmond*, 233 Neb. 834, 448 N.W.2d 569 (1989). When reviewing jury verdicts regarding the defense of entrapment, this court will disturb the jury's findings only when the preponderance of evidence against such findings is great and they clearly appear to be wrong, or when the findings are clearly contrary to law. In other words, we must sustain the jury's verdict if, taking the view most favorable to the State, there is evidence in the record to support it. *Parks, supra*.

Entrapment is the governmental inducement of one to commit a crime not contemplated by the individual, in order to prosecute that individual for the commission of the criminal offense. *State v. Jones*, 231 Neb. 47, 435 N.W.2d 167 (1989). Nebraska utilizes the " 'origin of intent' " test to determine questions of entrapment. *Swenson*, 217 Neb. at 823, 352 N.W.2d at 153. Under this test, entrapment consists of two elements: (1) government inducement of the defendant to commit the offense charged, and (2) a defendant's predisposition to commit the criminal act was such that he was not otherwise ready and willing to commit the offense on any propitious opportunity. *Van Egmond, supra*; *Jones, supra*; *Swenson, supra*. Ultimately, the "origin of intent" test focuses on the defendant's predisposition to commit the crime. *Swenson, supra*; *Byrd, supra*. If the jury finds that the defendant was predisposed to commit the crime, a defense of

entrapment must fail. 1 Wayne R. LaFave & Austin W. Scott, Jr., Substantive Criminal Law § 5.2 (1986). Thus, the burden is on the State to prove the defendant's predisposition beyond a reasonable doubt as part of its larger burden to prove that the defendant was not improperly induced. *Bocian, supra.*

Here, the State produced evidence that prior to any solicitations by Officer Heyen, the defendant stated that he had certain connections which enabled him to obtain drugs easily. Further, when Officer Heyen inquired about the availability of drugs, the defendant quickly identified a potential source. Ready access to illicit drugs is a legitimate factor for the jury to consider on the question of predisposition. *United States v. Dickens,* 524 F.2d 441 (5th Cir. 1975), *overruled on other grounds, United States v. Webster,* 649 F.2d 346 (5th Cir. 1981). In his conversations with Officer Heyen, the defendant was also able to quote specific prices for specific quantities of marijuana and exhibited knowledge of "Thai-stick" and "creeper," the latter an esoteric term unknown to Officer Heyen despite his extensive experience in undercover drug operations. A familiarity with and demonstrable orientation to the relevant activity also constitutes relevant evidence of predisposition. *Whiting v. United States,* 296 F.2d 512 (1st Cir. 1961).

The defendant argues that "any delivery to Officer Heyen was made only upon his specific request inducing the defendant to do so." Brief for appellant at 15. This argument ignores the fact that inquiry alone does not constitute inducement sufficient to sustain an entrapment defense. *Swenson, supra.*

> "[L]aw enforcement officers are not precluded from utilizing artifice and stratagem, such as the use of decoys or undercover agents, to apprehend a person engaged in a criminal enterprise, provided that they merely afford opportunities or facilities for the commission of an offense by one already predisposed or ready to commit it."

*Van Egmond,* 233 Neb. at 839, 448 N.W.2d at 572, quoting *Lampone, supra.* Certainly, overpersuasion, undue pressure, or coercion may indicate a reluctance or unwillingness on the part of the defendant to participate in the proposed criminal activity and thus a lack of predisposition. *State v. Gurule,* 194 Neb. 618, 234 N.W.2d 603 (1975). Though Ockinga testified that

Officer Heyen "pushed" the defendant and Ockinga to sell him drugs and that they were "wary" of him, Officer Heyen testified that the defendant willingly agreed to procure marijuana for him and in fact offered to do so upon hearing that "the tires are in." Officer Heyen's testimony is corroborated by tape recordings of some of the conversations and by Barber's testimony. The jury resolved the issue against the defendant, and we cannot say its verdict is unsupported by the evidence. The defendant's assignment of error regarding the sufficiency of the evidence is without merit.

## INEFFECTIVE ASSISTANCE OF COUNSEL

Next, the defendant claims he received ineffective assistance of counsel, in violation of U.S. Const. Amend. VI and Neb. Const. art. I, § 11. The defendant identifies several instances of allegedly deficient performance, which are more fully discussed below.

To sustain a claim of ineffective assistance of counsel, the defendant must show that (1) counsel's performance was deficient and (2) such deficient performance prejudiced his defense, that is, a demonstration of reasonable probability that, but for counsel's deficient performance, the result of the proceedings would have been different. *State v. Moss, ante* p. 21, 480 N.W.2d 198 (1992). See *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

In a criminal case, the standard for judging counsel's performance is whether the attorney performed at least as well as a lawyer with ordinary training and skill in the defense of a criminal case. *Moss, supra.* However,

> "a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. The object of an ineffectiveness claim is not to grade counsel's performance. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed. . . ."

*State v. Hawthorne*, 230 Neb. 343, 347, 431 N.W.2d 630, 633 (1988), quoting *Strickland v. Washington, supra.*

The defendant begins by noting several occasions when his counsel failed to request an instruction that the jury disregard certain evidence after the trial court sustained objections thereto. The first such instance occurred when Officer Heyen described the technique of simulating marijuana use and the State asked him whether the technique is "fairly typical." After Officer Heyen's affirmative response, defense counsel objected to the question as leading and asked that the answer be stricken. The court sustained the objection but did not instruct the jury to disregard the answer. The defendant complains that his counsel should have requested such an instruction.

The defendant's argument must fail because the alleged error in no way prejudiced his case. Just prior to the exchange at issue, Officer Heyen described the simulated smoking of marijuana as a "[c]ommonly used technique in drug enforcement." Moreover, after defense counsel's objection was sustained, the State rephrased the question and elicited the exact same response. As noted earlier, if properly admitted evidence exists to establish that which improperly admitted evidence also establishes, any error in receiving the inadmissible evidence is harmless error and not grounds for reversal. *State v. Carter*, 226 Neb. 636, 413 N.W.2d 901 (1987); *State v. Klingelhoefer*, 222 Neb. 219, 382 N.W.2d 366 (1986).

The same analysis applies to the defendant's next instance of alleged error. At another point in the trial the State asked Officer Heyen whether drug dealers are usually careful about to whom they sell. After Officer Heyen's affirmative response, defense counsel objected, and the trial court sustained the objection. The defendant again complains of counsel's failure to request an instruction to disregard the testimony. However, earlier in the trial Officer Heyen noted that police officers must simulate the smoking of marijuana in order to convince targeted sellers that they are legitimate buyers. Officer Heyen further testified that sellers are reluctant to sell to persons who do not appear to use drugs themselves. This testimony clearly conveyed to the jury that sellers of narcotics are careful about to whom they sell. The State's later inquiry was therefore merely cumulative, and any error in receiving Officer Heyen's testimony was harmless.

The defendant also alleges error in counsel's failure to request a limiting instruction after the trial court sustained his foundational objection to Officer Heyen's testimony that "THC" is "tetrahydrocannabinol." The defendant argues that receipt of this testimony improperly enhanced Officer Heyen's credibility in the eyes of the jury. However, as discussed earlier, Officer Heyen's formal training and practical experience in drug identification and enforcement sufficiently qualified him to testify as he did. Moreover, his testimony is cumulative because the forensic chemist also explained that THC is an abbreviation for tetrahydrocannabinol. We therefore conclude that Officer Heyen's testimony did not prejudice the defendant.

The defendant also challenges his counsel's conduct regarding a tape admitted into evidence and played for the jury at trial. The tape contains recordings of the two meetings attended by Officer Heyen, Barber, Ockinga, and the defendant on February 27, 1990. A summary of the first conversation, recorded by Officer Heyen upon leaving the defendant's residence, is also included on the tape. At trial, the court sustained the defendant's objection to this portion of the tape, and Officer Heyen's summary was not played for the jury. However, the tape remained in evidence, and the defendant argues, apparently on the assumption that the trial court sent the tape and a playback device with the jury to the deliberation room, that his counsel should have requested an instruction that the jury disregard Officer Heyen's summary of the initial meeting.

The defendant's argument on this point fails for several reasons. First, the trial court specifically instructed the jury to disregard any evidence stricken from the record. Second, the rule in a majority of jurisdictions is that the trial court retains broad discretion to permit the jury to review during deliberations exhibits admitted into evidence at trial. 3 Wayne R. LaFave & Jerold H. Israel, Criminal Procedure § 23.7(b) (1984); State v. Frazier, 99 Wash. 2d 180, 661 P.2d 126 (1983). Nebraska law is in accord. Edwards v. State, 113 Neb. 698, 204 N.W. 780 (1925). The fact that such discretion exists, however, does not require an appellate court to presume its exercise in every case. Here, there is no indication in the record that the

jury requested the opportunity to listen to the tape, that it was ever sent to the jury room, or that it was examined during deliberations. In the absence of such a record, there is no issue to review on appeal. *State v. King*, 708 S.W.2d 364 (Mo. App. 1986). Finally, the summary on the tape is essentially repetitive of Officer Heyen's testimony. Therefore, even if we presume the trial court sent the tape to the jury room, no prejudice to the defendant resulted from defense counsel's failure to take steps to prevent the jury from hearing the disputed portion. *Esterline v. State*, 707 S.W.2d 171 (Tex. App. 1986).

The defendant next argues that his counsel provided ineffective representation in failing to move to dismiss the charge either at the close of the State's case or at the conclusion of the trial. On a criminal defendant's motion to dismiss for insufficient evidence of the crime charged, the State is entitled to have all its relevant evidence accepted as true and every controverted fact resolved in its favor. *State v. Grantzinger*, 235 Neb. 974, 458 N.W.2d 461 (1990). If, when viewed in this light, the State's evidence is sufficient to establish all the elements of the crime charged, a denial of the defendant's motion to dismiss is without error. *State v. Jacobs*, 226 Neb. 184, 410 N.W.2d 468 (1987). The testimony of Officer Heyen, Barber, and the forensic chemist is sufficient to establish commission of the offense charged. Because the trial court would have properly overruled any motion to dismiss, defense counsel's failure to make such a motion did not prejudice the defendant.

Finally, the defendant contends that his counsel provided ineffective assistance in failing to call as witnesses at the sentencing hearing the authors of two letters favorable to the defendant included in the presentence investigation report. Also contained in the presentence report is a reference by the probation officer to the defendant's unstable work record. This reference is based upon information in the report regarding the defendant's loss of several jobs due in part to his unwillingness to go to work after using drugs and alcohol. However, the report also reveals the defendant's participation in a Nebraska job training center program involving his employment with the Crete Housing Authority. A representative of the job training center, as well as his supervisor at the housing authority, wrote a

letter noting the defendant's excellent attitude and work performance while involved in the program. The defendant argues that calling the authors of these letters as witnesses would have allowed him to refute the conclusions of the probation officer regarding his work activity.

Again, the defendant's argument is not well taken. First, his success in the job training program does not "refute" the fact that the defendant has an unstable work history. More importantly, we note that sentencing courts are required to give due consideration to the information contained in a written presentence investigation report. Neb. Rev. Stat. § 29-2261 (Reissue 1988). A finding of ineffectiveness based upon the failure to call as witnesses those with information favorable to the defendant which is already included in a presentence report would serve neither the defendant's interests nor those of the public in an efficient judicial system. The defendant's assignment of error regarding effectiveness of his counsel is without merit.

## EXCESSIVENESS OF THE SENTENCE

Finally, the defendant argues that the trial court erred in denying the defendant's request for probation and imposing a sentence of imprisonment.

Delivery of marijuana is a Class III felony punishable by 1 to 20 years in prison, a $25,000 fine, or both. Neb. Rev. Stat. §§ 28-416(1)(a) and (2)(b), 28-405(c)(10) [Schedule I], and 28-105(1) (Reissue 1989). Cf. Neb. Rev. Stat. §§ 28-416(2)(a) and 28-401(16) and (35)(a) (Reissue 1989). In this case the trial court sentenced the defendant to 1 year in prison, with credit for 8 days spent in the county jail.

A sentence imposed within the statutory limits will not be disturbed on appeal absent an abuse of discretion by the sentencing court. *State v. Schumacher, ante* p. 184, 480 N.W.2d 716 (1992). Similarly, whether the sentence imposed is probation or incarceration is a matter within the discretion of the trial court, and a judgment denying probation will be upheld unless the trial court abuses its discretion. *State v. Tuttle,* 238 Neb. 827, 472 N.W.2d 712 (1991).

In denying the defendant's request for probation in this case,

the trial court considered the defendant's refusal to take responsibility for his acts, as exhibited by a letter addressed to the court in which the defendant states that the voice on the tape identified at trial as his was in fact Barber's. The court also noted the defendant's long history of drug and alcohol abuse and his refusal to cooperate with and ultimate discharge from an inpatient drug and alcohol abuse treatment program in December 1989. Though this is the defendant's first brush with the criminal justice system, the sentence imposed is the statutory minimum, and we cannot say the trial court abused its discretion in denying the defendant's request for probation. Accordingly, the judgment and sentence of the trial court are affirmed.

AFFIRMED.