STATE OF NEBRASKA, APPELLEE, V. LEE WICKLINE, APPELLANT.

488 N.W.2d 581

Filed September 11, 1992.    Nos. S-90-1135, S-90-1136.

Lee Wickline, pro se.

Don Stenberg, Attorney General, and Terri M. Weeks for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

HASTINGS, C.J.

This is a consolidated appeal from judgments of the district court denying defendant's motions for postconviction relief from his convictions of one charge of theft and one charge of burglary. We affirm.

"In an appeal involving a proceeding for postconviction relief the trial court's findings will be upheld unless such findings are clearly erroneous." *State v. Gildea*, 240 Neb. 780, 782, 484 N.W.2d 467, 468 (1992).

Lee Wickline, the defendant, was charged in separate informations with theft and burglary, and he was convicted of both charges. The two convictions were affirmed on direct appeal. *State v. Wickline*, 232 Neb. 329, 440 N.W.2d 249 (1989) (*Wickline I*).

Although the facts are set out in detail in *Wickline I*, we mention briefly some of the more salient points. On April 7, 1988, at approximately 1:30 a.m., Steve Reiter, a resident of Ewing, Nebraska, observed a man walking down the sidewalk wearing a backpack. At about the same time, Reiter saw an automobile with a flat tire parked nearby. This was the only vehicle on the street other than the one in which the witness was riding. The witness asked the man if he needed any help, and he said, "[N]o, leave me alone." Shortly thereafter, the witness again observed this man take off for an alleyway and try to hide between a housetrailer and the police station, and when asked what he was doing he said, "I am just trying to find a place to sleep." The witness reported these facts to the local police officer later that morning.

Another resident of Ewing, Elfreda Pruden, heard a noise about 5 a.m., looked outside, and saw someone sitting in her yard smoking a cigarette, so she called the same police officer, William Hubert.

Officer Hubert went to that location and found the defendant lying on the ground with his head on his duffelbag.

The defendant was taken to the Ewing police station where he was observed smoking a Salem cigarette. The cigarette butt was taken and marked as evidence.

Another passenger in the Reiter vehicle, along with Tim Hobbs, was Hobbs' wife, Nadine Hobbs, who, in answer to a call from Officer Hubert, came to the police station and looked through the window from the outside, saw the defendant seated there, and identified him as the person they had seen earlier walking on the sidewalk. This information was testified to by Officer Hubert. Although this testimony was objected to as part of a continuing objection as an improper showup, which was raised on direct appeal and rejected by this court in *Wickline I*, no hearsay objection was interposed.

There was testimony that the automobile in question had been stolen from the BG&S transmission shop in O'Neill, Nebraska. Additionally, the owner of that establishment testified that a bank deposit bag containing 21 $20 bills, a $5 bill, a $1 bill, and change had been stolen at the same time that the automobile had disappeared. The owner testified that the shop's door had been pried open. The moneybag was found on the roof of a building close to where the stolen automobile was found on the street. The defendant had secreted in his eyeglass case 23 $20 bills and a $5 bill, and he had a number of coins in his possession.

Several cigarette butts were found in the ashtray of the stolen automobile, and when the cigarette butt which defendant had smoked at the police station and at least one of the butts found in the automobile were analyzed for amylase (an enzyme contained in saliva), it was determined that the saliva on both cigarette butts was of the same blood group.

Finally, a search of defendant's duffelbag disclosed a clawhammer and a screwdriver, either or both of which, it would seem, could have been used to force open the door of the BG&S transmission shop.

It was on the basis of this evidence, including the testimony of Officer Hubert as to the eyewitness' identification, that defendant was convicted and upon which this court affirmed the conviction.

Defendant's assignments of error on this appeal claim that he

was improperly denied his Fifth Amendment right to confront an eyewitness who had identified him, because she was not produced as a witness at his trial; that his trial counsel was ineffective in failing to object to hearsay testimony by a police officer regarding this identification; and that his trial counsel was inadequate, in that he filed a brief on direct appeal that did not conform to this court's rules.

The district court dismissed the postconviction petition after a hearing. That court found that Wickline had not been prejudiced by the unavailability of the identifying eyewitness because the other evidence against him was overwhelming. The court further found that counsel's decision not to object to the eyewitness testimony was a matter of trial strategy, in that the record did not show that the eyewitness was unavailable and the State could have introduced the identification into evidence simply by calling her as a witness. Specifically, the court in its findings declared:

> Furthermore there is no showing that Nadine Hobbs was not available as a witness, and presumably could have been called. Anyone familiar with trials [sic] tactics knows that in practically every trial a great deal of hearsay is admitted without objection. In any trial many valid objections are waived as a matter of trial tactics without consulting the client. The usual reason is that the evidence is admissible if offered by the correct procedure, the opponents knows [sic] the evidence is admissible and knows [sic] the correct procedure to get it admitted. When a trial attorney knows this, there is no p[o]int in making the opponent offer the evidence the hard way, particularly when the hard way is often the more dramatic and more effective way.
>
> A great deal of hearsay is introduced at trial on the above basis. In this case there is no apparent reason why the prosecution could not have called Nadine Hobbs. The record shows the defendant's counsel was going to object to her testimony on the basis that it was the result of an improper showup. That same objection was made by the defendant's counsel, denied by the trial court and affirmed by the Supreme Court.

This court finds that beyond a reasonable doubt the defendant did not show his trial counsel was constitutionally ineffective by not objecting to the hearsay, nor that the defendant was prejudiced by the failure to object. Furthermore there is no reasonable probability that the results would have been different if the hearsay had been excluded.

Wickline's claim that he was denied his Fifth Amendment right to confront Hobbs regarding her identification of him, due to the failure of the State to call her, may not be considered in this proceeding because of the failure of defense counsel to object at the time of trial. "A motion for postconviction relief cannot be used to secure review of issues which were *or could have been* litigated on direct appeal." (Emphasis supplied.) *State v. Nearhood*, 233 Neb. 767, 771, 448 N.W.2d 399, 403 (1989). Therefore, we need consider in this regard only the claim that the district court erred in failing to find that Wickline's trial counsel was ineffective in his handling of the Hobbs identification.

The trial court in its findings declared that there appeared no reason of record why Hobbs could not have been called to testify in person regarding the identification of Wickline. As is often the case, the strict adherence to the rules of evidence when such action seeks only to prolong or accentuate the obvious is oftentimes detrimental to the objecting party's case. The trial court agreed with this strategy. In *State v. Lieberman*, 222 Neb. 95, 101-02, 382 N.W.2d 330, 335 (1986), this court said:

We have often held that the decision to object or not to object is part of trial strategy and that this court gives due deference to defense counsel's discretion in formulating trial tactics. [Citations omitted.] To maintain a claim of ineffective assistance of counsel, the record must affirmatively support the defendant's position. [Citation omitted.] Further, the effectiveness of counsel will not be judged by hindsight. [Citation omitted.] We conclude that Lieberman has failed to support adequately his claim of prejudice in counsel's decision not to object to this testimony.

Notwithstanding the issue as to trial strategy,

> To sustain a claim of ineffective assistance of counsel, the defendant must show that (1) counsel's performance was deficient and (2) such deficient performance prejudiced his defense, that is, a demonstration of reasonable probability that, but for counsel's deficient performance, the result of the proceedings would have been different.

*State v. Stahl*, 240 Neb. 501, 512, 482 N.W.2d 829, 839 (1992). The two prongs of this test need not be addressed in order: " ' "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed. . . ." ' " *Id.* (quoting *State v. Hawthorne*, 230 Neb. 343, 431 N.W.2d 630 (1988), quoting *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)).

Wickline has suffered prejudice from the failure of his trial counsel to suppress the hearsay testimony relating to Hobbs' identification only if there was a reasonable probability, in light of the remainder of the evidence, that the exclusion of such evidence would have produced a different result. See *State v. Stahl, supra*.

In *State v. Evans*, 235 Neb. 575, 456 N.W.2d 739 (1990), the defendant alleged that his counsel had been ineffective in failing to call an alibi witness. This court held that the witness' testimony "would not, with reasonable probability, have changed the result in [the] case" because of other evidence linking the defendant to the charged crimes. *Id.* at 580, 456 N.W.2d at 743. Accordingly, counsel's performance was not ineffective.

In this case, as in *State v. Evans*, there is other evidence sufficient that it cannot be said, to a reasonable probability, that the result would have been different had the evidence of Hobbs' identification of Wickline not been admitted. When Wickline was arrested in Ewing, he had a duffelbag. Reiter's testimony was that the man he had seen walking near the stolen car had a backpack. The moneybag stolen in the BG&S burglary was found on the roof of a building near the stolen car.

When the cigarette butt which Wickline had been seen smoking was compared with one or more cigarette butts taken

from the ashtray of the stolen car, both were found to contain saliva from a "type H secretor." Additionally, at least one of the cigarette butts taken from the automobile ashtray was the same brand Wickline was smoking.

The most damning evidence against Wickline was the currency he possessed at the time of his arrest. When he was taken to the county jail, a sheriff's deputy asked Wickline if he had any money. Wickline answered that he did not. Later Wickline asked to, and was allowed to, go alone to the bathroom. Wickline took his eyeglass case with him. When Wickline emerged, his clothes and personal effects were taken from him and inventoried, but he was allowed to keep the eyeglass case.

The sheriff's deputy later searched Wickline's eyeglass case and found currency matching almost identically the description of the currency claimed to have been in the moneybag when it was stolen.

Finally, there was evidence of forcible entry at the scene of the burglary likely to have been made by a pry instrument, and Wickline had in his possession a clawhammer and a screwdriver.

Taken piece by piece, it is possible that none of this evidence individually, excluding the identification testimony, would have been sufficient to convict Wickline. However, taken as a whole, the evidence is sufficient that it cannot be said to a reasonable degree of probability that the result of Wickline's trial would have been different if Hobbs' identification of him had not been admitted.

In *State v. Durst*, 232 Neb. 639, 441 N.W.2d 627 (1989), this court affirmed the defendant's conviction for theft of an auto upon circumstantial evidence, despite a lack of a positive identification of the defendant as the thief. A man resembling the defendant was seen walking near the scene of the theft. Later, the defendant was involved in an accident while driving a car of the same make, model, and year and bearing the same license plates as the car that had been stolen. The defendant was transported from the scene of the accident by a police officer, who later found the keys to the stolen car in the backseat of his cruiser. This court held that "[t]his evidence was clearly

sufficient to sustain the verdict of the jury . . . ." *Id.* at 641, 441 N.W.2d at 629.

As in *State v. Durst*, circumstantial evidence linked Wickline to the abandoned vehicle and the scene of the burglary. Similarly, Wickline's actions in secreting cash in his eyeglass case prior to the search of his person and the inventory of his personal effects shows that he did not wish the police to know he possessed the cash, in the same way that the abandonment of the stolen car's keys by the defendant in *State v. Durst* showed defendant's guilty knowledge. The evidence in this case, even if Hobbs' identification of Wickline is omitted, would be sufficient to sustain his conviction. He has therefore suffered no prejudice from his trial counsel's allegedly deficient performance, and his claim of ineffective assistance fails.

Wickline next contends that the trial court committed error in failing to find that his counsel on direct appeal was ineffective, in that the brief filed by that attorney was inadequate. However, Wickline did not provide the district court with a copy of that brief and therefore failed to properly present the issue for the postconviction court, and this court may not now consider this assignment of error.

Finally, Wickline charges that the district court erred in failing to appoint counsel to represent him in this appeal. He cites *State v. Wiley*, 228 Neb. 608, 423 N.W.2d 477 (1988). However, that case is of no help to Wickline because it deals with appointment of counsel at the trial stage of a postconviction proceeding, and Wickline had court-appointed counsel in this case at that stage of the proceedings.

> [U]nder the Post Conviction Act it is within the discretion of the District Court to determine whether legal counsel shall be appointed to represent a defendant on appeal to this court, and in the absence of a showing of an abuse of discretion, the failure to appoint counsel is not error.

*State v. Paulson*, 211 Neb. 711, 715, 320 N.W.2d 115, 118 (1982). Wickline has shown no abuse of discretion.

The judgments of the district court dismissing Wickline's postconviction petitions are affirmed.

AFFIRMED.