STATE OF NEBRASKA, APPELLEE, V.
DWAYNE GREER, APPELLANT.
586 N.W. 2d 654

Filed October 13, 1998. No. A-97-596.

Robin W. Hadfield, of Nebraska Commission on Public Advocacy, for appellant.

Don Stenberg, Attorney General, and Kimberly A. Klein for appellee.

HANNON, IRWIN, and INBODY, Judges.

INBODY, Judge.

## I. INTRODUCTION

Dwayne Greer appeals from his convictions for two counts of burglary; four counts of use of a weapon to commit a felony; and one count each of first degree sexual assault, second degree assault, and first degree false imprisonment. Greer also appeals the sentences imposed thereon.

## II. STATEMENT OF FACTS

In the summer of 1995, A.L. was living at 1700 B Street, apartment No. 1, in Lincoln, Nebraska, with two other young women, H.S. and P.S. The apartment was located in an old house that had been converted into five apartments. A.L., H.S., and P.S.' apartment occupied part of the main floor and part of the basement of the converted house.

In the summer months, sometime before August 1995, A.L. and P.S. met Greer when he was helping some people move out of one of the other apartments in the converted house. In

August, Greer came to A.L., H.S., and P.S.' downstairs apartment door at 2 or 3 o'clock in the morning. P.S. and H.S. answered the door. Greer identified himself as "Dwayne" and asked where the girl with the maroon car was. P.S. and H.S. knew that Greer was asking for A.L., because she drove a small maroon car. H.S. and P.S. informed Greer that A.L. was not there, and Greer left. The next morning, P.S. and H.S. discovered that their apartment had been burglarized. A boom box stereo, cellular telephone, and wallet belonging to H.S. were missing. Between 11 p.m. and 2 a.m. the night after the burglary, Greer was outside of the apartment again.

On November 3, 1995, in the early morning hours, A.L. reported that she was awakened by an intruder who sexually assaulted her at knifepoint. A.L. was able to provide police with the following description of her assailant: a black male, medium to stocky build, wearing dark clothing, including a dark ski mask and a dark sweatshirt and lighter-colored cloth gloves. During the assault, A.L. was stabbed in the right thigh, and A.L.'s assailant left bloody shoe prints at the scene.

Just prior to the report of the sexual assault to police, at approximately 4:35 a.m., Lincoln police officer Chad Barrett observed a black male approximately 5'11" to 6'0" tall and weighing approximately 185 pounds running in the area of 10th and G Streets. This area is about 16 blocks away from 1700 B Street. The man was wearing a dark-colored hooded sweatshirt and dark-colored sweatpants or jeans. The male ran to an apartment complex at 919 G Street.

After police officers were dispatched to 1700 B Street to investigate the reported sexual assault, Officer Barrett was ordered to set a perimeter around the 919 G Street apartment complex to observe individuals entering or exiting the complex. Officer Barrett began contacting individuals living in the apartment complex, specifically apartment No. 1. Officers were informed that there were no black males living in the complex but that there was a black male who had lived across the alley in a complex located at 920 F Street, which was just south of 919 G Street. Upon learning this, officers contacted the party living in apartment No. 1 at 920 F Street, a black female named "Brenda Greer."

Officer Barrett continued to observe the complex at 920 F Street, and apartment No. 1 in particular, for another 45 minutes, at which time he was relieved by Investigator Charles Starr just prior to 7 a.m. Officer Starr had been watching the apartment for only a few minutes when he noticed the door to apartment No. 1 open and a female look out. Officer Starr observed a while longer, at which time he saw a black male look out the door. A few minutes later, the black male, whom Officer Starr identified as Greer, left the apartment. After Greer exited the apartment, Officer Starr made contact with him. At the time, Officer Starr was in plain clothes, but he did identify himself as a police officer. Officer Starr advised Greer that another officer wished to speak with him. Greer then left with a Sergeant Wright, who transported Greer to an interview room at the Lincoln Police Department. According to Det. Sgt. Larry Barksdale, Greer got into the police cruiser voluntarily and was free to leave.

Later on November 3, 1995, Officer Barksdale contacted Greer in the Lincoln Police Department interview room for the purpose of asking Greer if he would voluntarily give blood, saliva, and hair samples. Greer responded negatively. Officer Barksdale then obtained an order for identifying physical characteristics which required Greer to provide blood, saliva, and hair samples and transported Greer to Lincoln General Hospital, where the evidence was obtained.

Also on November 3, 1995, Det. Sgt. Richard Kohles obtained a search warrant for 920 F Street, apartment No. 1. The warrant was to search for evidence of the sexual assault: blood, clothes, knives. After obtaining the search warrant, Officer Kohles, Det. Sgt. Jim Breen, and Officer John Grubb conducted a search of the apartment at approximately 12:25 p.m. on November 3. As a result of this search, the officers seized, among other things, a Nokia cellular telephone, serial No. 16502550608; a ski mask; a pair of gray jeans; a pair of blue jeans; a pair of black Adidas brand tennis shoes; a black hooded sweatshirt with buttons down the front; another black sweatshirt; and a pair of black sweatpants.

The serial number of the cellular telephone seized from Greer's apartment matched the serial number on the cellular

telephone box which H.S. had provided to the police. Additionally, when the recall button was pressed, the last number called was displayed. The telephone number displayed was 475-0638. The Lincoln Police Department was able to determine that two people had given the 475-0638 telephone number to the police department as a result of some sort of police contact. One of those individuals was Greer, who had given police that number in June 1995.

In November 1995, Det. Sgt. Sandra Myers retrieved a black Sanyo CD boom box, model MCDZ22, serial No. 01012850, which had been pawned by Brenda Greer, from the BB&R Pawn Shop.

On December 11, 1995, an information was filed in Lancaster County District Court charging Greer with count I, burglary; count II, first degree sexual assault; count III, use of a weapon to commit a felony; count IV, burglary; count V, use of a weapon to commit a felony; count VI, second degree assault; count VII, use of a weapon to commit a felony; count VIII, first degree false imprisonment; and count IX, use of a weapon to commit a felony.

Pretrial motions and hearings included a motion by Greer to sever count I (burglary charge) from the remaining charges, which motion was subsequently overruled. Following a hearing, pursuant to *Frye v. United States*, 293 F. 1013 (D.C. Cir. 1923), regarding the admissibility of DNA evidence, the court entered an order finding that DNA evidence would be admissible at trial. Also, on March 31, 1997, Greer filed a motion to suppress, requesting exclusion of all physical evidence seized from Greer's residence. The trial court declined to set a separate hearing on the motion because defense counsel had failed to file the motion at least 10 days prior to trial. However, the court also stated:

> I think during the course of a trial the Court can always be cognizant of Constitutional issues. And I will do so in this case. But because of the 10-day rule, I'm not going to set at [sic] separate hearing on this motion. But it will be on file and you can argue these issues during the trial by objections to any particular evidence that may be offered.

Trial began on April 2, 1997. During trial, Dr. Reena Roy, a forensic serologist at the Nebraska State Patrol Criminalistics

Laboratory, testified that she performed forensic tests on items submitted to her in this case and that she prepared some items to be sent to Cellmark Diagnostics for DNA testing. Dr. Roy examined the pair of gray jeans, which had been seized from Greer's apartment, and determined that the jeans tested positive for human blood, type A. The significance of finding type A blood on the jeans is that the blood could not have come from Greer, but it could have come from A.L.

Dr. Roy found spermatozoa present on both the vaginal and rectal smear slides obtained from A.L., and semen was present on A.L.'s panties, as well as the vaginal and rectal swabs. Blood was also present on A.L.'s panties.

Karen Quandt, a senior molecular biologist for Cellmark Diagnostics, conducted tests on four items in this case: Greer's jeans, a vaginal swab, and blood samples from Greer and A.L. She obtained DNA from each of these items. Quandt testified that with regard to the jeans sample, Greer was excluded as being the source of DNA from that sample and that A.L.'s known DNA sample matched the sample from the jeans. Additionally, Greer's DNA sample matched the male fraction of the vaginal swab.

Lisa Forman, a population geneticist at Cellmark Diagnostics, testified that with regard to the DNA banding pattern that matched between the jeans and the bloodstain from A.L., the frequency would be approximately 1 in 30 million in the Caucasian population, 1 in 12 billion in the African-American population, and 1 in 310 million in the western Hispanic population. In other words, Forman testified that the likelihood that, by chance alone, the set of characteristics on the blue jeans would match those found in the blood of A.L. are approximately 1 in 30 million in Caucasian, 1 in 12 billion in African-Americans, and 1 in 310 million in western Hispanics.

With regard to the other set of DNA banding patterns obtained from the vaginal swabs which matched the DNA obtained from Greer's bloodstain, the frequency of a match would occur in approximately 1 in 26 trillion in the Caucasian population, 1 in 1.9 trillion in the African-American population, and 1 in 2.1 trillion in the western Hispanic population.

Mark Bohaty, a firearms and toolmark examiner in the Nebraska State Patrol crime laboratory, compared a piece of tile

from A.L.'s apartment to the Adidas brand tennis shoes seized from Greer's apartment. Bohaty testified that in his opinion to a reasonable degree of scientific certainty, the partial impression on the pieces of tile could have been produced by Greer's right Adidas shoe. However, due to a lack of individual observable random imperfections in the shoes, he could not positively identify them as being produced by that shoe, as another shoe similar in physical size, design, and shape could not be excluded from having produced the partial impressions.

On April 9, 1997, the jury returned a verdict finding Greer guilty on all nine counts. On May 7, Greer was sentenced as follows: count I, 2 to 5 years' imprisonment; count II, 25 to 50 years' imprisonment; count III, 3 to 10 years' imprisonment; count IV, 3 to 5 years' imprisonment; count V, 3 to 5 years' imprisonment; count VI, 4 to 5 years' imprisonment; count VII, 3 to 10 years' imprisonment; count VIII, 4 to 5 years' imprisonment; and count IX, 3 to 5 years' imprisonment. The sentences were ordered to be served consecutively, and Greer was given credit for 538 days already served. Greer then filed a timely notice of appeal to this court.

### III. ASSIGNMENTS OF ERROR

On appeal, Greer asserts that the trial court erred in (1) giving an erroneous burglary jury instruction; (2) failing to give his proposed jury instruction No. 1; (3) failing to suppress evidence; (4) failing to grant his motion to sever trial; (5) allowing evidence obtained from a sink drain trap in his apartment; (6) convicting him of burglary (count IV), which violated his constitutional right to freedom from double jeopardy; (7) providing ineffective assistance of counsel; (8) imposing an illegal sentence for use of a weapon to commit second degree assault; and (9) imposing excessive sentences.

### IV. DISCUSSION

#### 1. JURY INSTRUCTION REGARDING BURGLARY

First, we address Greer's contention that the jury was inadequately instructed as to the burglary charges, because neither the burglary instruction nor the definition of "breaking and entering" instructed the jury that removal of an obstacle to entry is required for a burglary to occur.

■ Neb. Rev. Stat. § 28-507 (Reissue 1995) provides that "[a] person commits burglary if such person willfully, maliciously, and forcibly breaks and enters any real estate or any improvements erected thereon with intent to commit any felony or with intent to steal property of any value." It is well-settled law in Nebraska that a breaking is an essential element of burglary. *State v. McDowell*, 246 Neb. 692, 522 N.W.2d 738 (1994); *State v. Crispell*, 201 Neb. 759, 272 N.W.2d 51 (1978); *McGrath v. State*, 25 Neb. 780, 41 N.W. 780 (1889).

In *McDowell, supra*, the Nebraska Supreme Court considered whether climbing or jumping a fence constituted "breaking" within the definition of the burglary statute. In determining that climbing or jumping a fence does not constitute a "breaking" under the definition of the burglary statute, the court stated that

> force alone is not enough to constitute a breaking. It takes physical force to walk through an open door or to crawl through an open window, but no obstruction is removed; thus, there is no breaking. Although it undoubtedly took McDowell some measure of force to climb or jump the fence in the instant case, no obstruction was removed. McDowell merely entered through the open space above the fence. Thus, as a matter of law there was no breaking, and therefore no burglary.

*McDowell*, 246 Neb. at 700, 522 N.W.2d at 744.

■ Further, the court considered McDowell's assigned errors concerning the jury instructions on burglary. The Nebraska Supreme Court noted that the trial court did not instruct the jury that breaking requires an obstruction to entering to have been removed. Specifically, the jury was instructed that the definition of breaking and entering was to enter any real estate or improvement thereon by any act of physical force, however slight, including opening a door or window. The Supreme Court stated:

> As discussed above, it is the law of Nebraska that breaking requires both the use of physical force, however slight, and the removal of an obstruction to entering. Also, it is the duty of the trial judge to instruct the jury on the pertinent law of the case, whether requested to do so or not,

and an instruction or instructions which by the omission of certain elements has the effect of withdrawing from the jury an essential issue or element in the case is prejudicially erroneous. [Citation omitted.] *When burglary is charged, a jury should be instructed that in addition to the use of physical force, however slight, the removal of an obstacle to entry is necessary to find a breaking.*

(Emphasis supplied.) *McDowell*, 246 Neb. at 701, 522 N.W.2d at 744.

In the instant case, the jury was instructed that regarding the charge of burglary (count I), the elements of the State's case were as follows:

1. That the defendant, Dwayne Greer, did willfully, maliciously and forcibly break and enter real estate or any improvements erected thereon, located at 1700 "B" Street, Lincoln, Lancaster County, Nebraska;

2. That the defendant did so with the intent to commit any felony or with the intent to steal property of any value; and

3. That the defendant did so on or about August 10, 1995.

Instruction No. 4. Additionally, with regard to the burglary charge embodied in count IV, the jury was instructed that the elements of the State's case were as follows:

1. That the defendant, Dwayne Greer, did willfully, maliciously and forcibly break and enter any real estate or any improvements erected thereon located at 1700 "B" Street in Lincoln, Lancaster County, Nebraska;

2. That the defendant did so with the intent to commit any felony or with the intent to steal property of any value; and

3. That the defendant did so on or about November 3, 1995.

*Id.* Further, the jury was instructed that "[b]reaking and entering" means "entering a building by any act of physical force, however slight, including opening a door or unhooking a door fastener." Instruction No. 9. This definition of "breaking and entering" is substantially similar to the one disapproved of in *State v. McDowell*, 246 Neb. 692, 522 N.W.2d 738 (1994).

It appears that even read together, the jury instructions given by the court did not instruct the jury that the removal of an obstacle to entry is necessary to find a breaking as is required by *McDowell, supra.* Furthermore, we cannot say that this error is harmless. In a criminal case tried to a jury, harmless error exists when there is some incorrect conduct by the trial court which, on review of the entire record, did not materially influence the jury in reaching a verdict adverse to a substantial right of the defendant. *State v. Cebuhar,* 252 Neb. 796, 567 N.W.2d 129 (1997); *State v. Morris,* 251 Neb. 23, 554 N.W.2d 627 (1996).

We cannot conclude that the jury would necessarily have found Greer guilty of burglary based on the evidence offered had it been properly instructed on what the State was required to prove. Therefore, it is necessary to reverse Greer's burglary convictions and vacate his sentences for counts I and IV and remand for a new trial on those charges. Likewise, we must reverse the conviction and vacate the sentence for the use of a weapon charge for count V corresponding to Greer's burglary conviction embodied in count IV and remand for a new trial on that charge also.

## 2. TRIAL COURT'S FAILURE TO GIVE APPELLANT'S PROPOSED JURY INSTRUCTION NO. 1

Greer also assigned as error the district court's refusal to give his proposed jury instruction No. 1 regarding burglary. Because this is an issue likely to arise again during Greer's retrial on the burglary charges, we must address this issue. See *State v. Porter,* 235 Neb. 476, 455 N.W.2d 787 (1990).

■ To establish reversible error from a trial court's refusal to give a requested jury instruction, an appellant has the burden to establish that (1) the tendered instruction is a correct statement of the law, (2) the tendered instruction is warranted by the evidence, and (3) the appellant was prejudiced by the court's refusal to give the tendered instruction. *State v. Derry,* 248 Neb. 260, 534 N.W.2d 302 (1995); *State v. Myers,* 244 Neb. 905, 510 N.W.2d 58 (1994); *State v. Charles,* 4 Neb. App. 211, 541 N.W.2d 69 (1995).

Greer's proposed jury instruction No. 1 stated:

Evidence that a burglary was committed, together with evidence that some of the property stolen in the burglary

was discovered in the possession of the defendant, is not alone sufficient to make a prima facie case for burglary. To sustain a conviction, the evidence must show beyond a reasonable doubt not only that the crime, as defined, was committed, but that the defendant was the person who committed it. State v. Sedlacek, 178 Neb. 32[2]; Henggler v. State, 173 Neb. 171.

We fail to see how Greer was prejudiced by the trial court's refusal to present his proposed jury instruction No. 1 to the jury. The jury instruction given by the court, although lacking with regard to the "breaking and entering" aspect, was sufficient to instruct the jury regarding the substance of Greer's proposed jury instruction No. 1. Therefore, this assigned error is without merit.

### 3. Court's Failure to Suppress Evidence Illegally Obtained

Greer next assigns as error the trial court's failure to suppress physical evidence (blood and saliva samples) which was obtained from his person in violation of his constitutional rights. It appears that Greer seeks to exclude the blood and saliva samples and evidence obtained as a result of the search of Greer's apartment because (1) the court order to produce physical characteristics and the search warrant for Greer's apartment were based upon insufficient affidavits and (2) as fruit of the poisonous tree, the evidence was based upon the allegedly illegal seizure of his person, i.e., officers did not have probable cause for arrest.

### (a) Sufficiency of Affidavits

We interpret the first prong of Greer's argument objecting to the seizure, pursuant to warrant, of his blood and saliva samples and other physical evidence to be that the seizure was based upon insufficient affidavits.

In reviewing the strength of an affidavit as a basis for finding probable cause to issue a search warrant, Nebraska has adopted the "totality of the circumstances" rule established by the U.S. Supreme Court in *Illinois v. Gates*, 462 U.S. 213, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983). *State v. Detweiler*, 249 Neb. 485, 544 N.W.2d 83 (1996). Under this standard, the ques-

tion is whether, under the totality of the circumstances, the issuing magistrate had a " 'substantial basis' " for finding that the affidavit established probable cause. *Id.* at 489, 544 N.W.2d at 88. See, also, *State v. Duff*, 226 Neb. 567, 412 N.W.2d 843 (1987). An appellate court's after-the-fact scrutiny of the sufficiency of an affidavit should not take the form of de novo review. A magistrate's determination of probable cause should be paid great deference by reviewing courts. *Detweiler, supra.*

 The order for identifying physical characteristics and the supporting affidavit were not offered into evidence and are not in the record before this court. It is the duty of the party appealing to present a record which supports the errors assigned; absent such a record, as a general rule, the decision of the lower court is to be affirmed. *State v. Dyer*, 245 Neb. 385, 513 N.W.2d 316 (1994). The lack of the affidavit makes it impossible to review the court's determination to issue an order requiring Greer to produce identifying characteristics. Consequently, we must reject this portion of Greer's argument, and we turn next to the search warrant for Greer's apartment and the accompanying affidavit.

A search warrant, to be valid, must be supported by an affidavit establishing probable cause, or reasonable suspicion founded upon articulable facts. *State v. Grimes*, 246 Neb. 473, 519 N.W.2d 507 (1994). In evaluating probable cause for the issuance of a search warrant, the magistrate must make a practical, commonsense decision whether, given the totality of the circumstances set forth in the affidavit before him, including the veracity of and basis of knowledge of the persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. *Id.* The duty of the reviewing court is to ensure that the issuing magistrate had a substantial basis for determining that probable cause existed.

*State v. Nelson*, 6 Neb. App. 519, 521-22, 574 N.W.2d 770, 772 (1998). A search pursuant to a warrant is presumed to be valid, and if the police act pursuant to a search warrant, the defendant bears the burden of proof that the search or seizure is unreasonable. *Nelson, supra.*

The affidavit for a search warrant for Greer's apartment is included in the record before this court. We have reviewed its contents and find that a substantial basis existed for the judge's finding that the affidavit established probable cause to search Greer's apartment.

### (b) Fruit of Poisonous Tree

We interpret the second prong of Greer's objection to the use of his blood and saliva samples at trial to be that Greer was seized in violation of his constitutional rights and that the blood and saliva samples were fruit of that poisonous tree and as such should have been excluded from evidence. See *Wong Sun v. United States*, 371 U.S. 471, 83 S. Ct. 407, 9 L. Ed. 2d 441 (1963). The difficulty that we have with this argument is that from the testimony at trial, it is uncontroverted that Greer voluntarily accompanied police to the police station to answer questions and that the blood and saliva samples were obtained pursuant to a court order. Therefore, we reject Greer's arguments concerning the suppression of evidence.

### 4. FAILURE TO SEVER TRIAL

Greer also assigns as error the trial court's failure to sever the burglary charge embodied in count I from the remainder of the charged offenses.

The consolidation of separate cases is governed by Neb. Rev. Stat. § 29-2002 (Reissue 1995), which provides as follows:

(1) Two or more offenses may be charged in the same indictment, information, or complaint . . . if the offenses charged . . . are of the same or similar character . . . .

(2) The court may order two or more indictments, informations, or complaints . . . to be tried together if the offenses could have been joined in a single indictment, information, or complaint . . . .

(3) If it appears that a defendant . . . would be prejudiced by a joinder of offenses . . . in separate indictments, informations, or complaints for trial together, the court may order an election for separate trials of counts, indictments, informations, or complaints, grant a severance of defendants, or provide whatever other relief justice requires.

A defendant opposing joinder of charges has the burden of proving that joinder will be prejudicial to the defendant. *State v. Freeman*, 253 Neb. 385, 571 N.W.2d 276 (1997). See *State v. Brunzo*, 248 Neb. 176, 532 N.W.2d 296 (1995). A defendant has no constitutional right to a separate trial. *Freeman, supra; Brunzo, supra*. The right is statutory and depends on a motion for a showing that prejudice will result from a joint trial. A trial court's ruling on a motion for consolidation of prosecutions properly joinable will not be disturbed on appeal absent an abuse of discretion. *Freeman, supra; Brunzo, supra*.

> A defendant is not prejudiced by the joinder of charges where the evidence relating to both offenses would be admissible in a trial of either offense separately. *State v. Thompson*, 231 Neb. 771, 438 N.W.2d 131 (1989). The evidence of other crimes need not be identical to the act charged to be admissible under rule 404(2). The evidence will be admitted if it is similar to and reasonably related to the offending conduct and is presented in a manner in which the prejudice does not outweigh its probative value. *State v. Ellis*, 208 Neb. 379, 303 N.W.2d 741 (1981).
>
> Pursuant to rule 404(2), evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he or she acted in conformity therewith. Evidence of other crimes may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. It is within the discretion of the trial court to determine the admissibility of evidence of other wrongs or acts, and the trial court's decision will not be reversed absent an abuse of discretion. *State v. Newman*, 250 Neb. 226, 548 N.W.2d 739 (1996).

*Freeman*, 253 Neb. at 398, 571 N.W.2d at 285.

Here the State alleged that Greer not only illegally entered apartment No. 1 on one occasion, but on two separate occasions. From our review of the record, we cannot say that it would have been an abuse of discretion for the trial court to allow the testimony regarding the first burglary into evidence at the trial regarding the second burglary, had the offenses been

tried separately, and vice versa. Further, since all of the charges which arose on the date of the second burglary were a direct consequence of the second burglary and are properly joined with count II, we cannot say that it was an abuse of discretion to allow all of the charged offenses to be tried together. Consequently, this assigned error is without merit.

## 5. DRAIN TRAP EVIDENCE

Greer next complains that the trial court erred in permitting evidence obtained from the drain trap from the sink of Greer's apartment to be presented to the jury, because the probative value of the evidence was outweighed by the danger of unfair prejudice. Even assuming that the drain trap evidence was erroneously admitted, a matter which we do not decide, such error, if any, was harmless, as the evidence of Greer's guilt regarding the first degree sexual assault was overwhelming.

No judgment shall be set aside, new trial granted, or judgment rendered in any criminal case on the grounds of misdirection of the jury or the improper admission or rejection of evidence or for error as to any matter of pleading or procedure if the appellate court, after an examination of the entire cause, considers that no substantial miscarriage of justice has actually occurred. Neb. Rev. Stat. § 29-2308 (Reissue 1995). Consequently, we reject this assignment of error.

## 6. DOUBLE JEOPARDY

Greer contends that his convictions and sentences for first degree sexual assault and burglary were obtained in violation of the prohibitions against double jeopardy. Greer argues that the burglary charge embodied in count IV is a lesser-included offense of the first degree sexual assault charge and that consequently, the burglary charge merges into the first degree sexual assault charge. Thus, Greer claims that his conviction for burglary and the sentence imposed thereon violate double jeopardy principles and that both the conviction and sentence must be vacated. We specifically note that Greer does not contend that the offenses of first degree false imprisonment or second degree assault are lesser-included offenses of burglary.

"[T]he constitutional prohibition against double jeopardy not only protects against a second prosecution for the

same offense after acquittal or conviction, but also protects against multiple punishments for the same offense." *State v. Nissen*, 252 Neb. 51, 82, 560 N.W.2d 157, 178 (1997). Accord, *State v. Sardeson*, 231 Neb. 586, 437 N.W.2d 473 (1989); *State v. Olsan*, 231 Neb. 214, 436 N.W.2d 128 (1989). The multiple punishment prong of the double jeopardy bar seeks to ensure that the total punishment imposed on a defendant does not exceed that authorized by the Legislature. *State v. McHenry*, 250 Neb. 614, 550 N.W.2d 364 (1996). See, also, *State v. Detweiler*, 249 Neb. 485, 544 N.W.2d 83 (1996). When a defendant has been convicted of both a greater and a lesser-included offense, vacation of the sentence on the lesser charge cures the double jeopardy violation. *Nissen, supra; McHenry, supra; Sardeson, supra.* "[H]owever . . . the constitutional prohibition against double jeopardy has no application where two separate and distinct crimes are committed as the result of one act, because the constitutional proscription is directed to the identity of the offense and not to the act." *Sardeson*, 231 Neb. at 594, 437 N.W.2d at 480. Accord *State v. Rice*, 231 Neb. 202, 435 N.W.2d 889 (1989).

> A determination of whether two convictions in a single trial lead to multiple punishment depends upon whether the legislature that designated the criminal statutory scheme intended that cumulative sentences be applied for conviction on both offenses. If the statute clearly and affirmatively indicates that the legislature intended that the defendant be punished cumulatively under both charges and the sentences for both charges are imposed in a single trial, the Double Jeopardy Clause is not offended.

*McHenry*, 250 at 635, 550 N.W.2d at 378. Accord *State v. McBride*, 252 Neb. 866, 567 N.W.2d 136 (1997). Thus, multiple punishments may be imposed for the same act without violating double jeopardy principles where imposition of the multiple punishments is specifically authorized by state statute. *Rice, supra.*

 In determining what constitutes lesser-included offenses, Nebraska has adopted the statutory elements approach, which involves a textual comparison of criminal statutes to determine if each statute contains at least one ele-

ment not contained in the other statute. *State v. Williams*, 243 Neb. 959, 503 N.W.2d 561 (1993). Thus, a lesser-included offense is one which is necessarily established by proof of the greater offense, or stated another way, to be a lesser-included offense, the elements of the lesser offense must be such that it is impossible to commit the greater offense without at the same time having committed the lesser offense. *Williams, supra*; *Sardeson, supra.* We proceed to consider whether first degree sexual assault and burglary are the "same offense" for purposes of double jeopardy analysis.

In support of his argument, Greer points to *McHenry, supra*, which he contends presents a similar situation to that found in the instant case. In *McHenry*, the defendant was convicted and sentenced for both felony murder (aiding and abetting first degree murder) and aiding and abetting attempted robbery. Noting that the Double Jeopardy Clause precludes multiple punishment for the same offense imposed in a single proceeding, the Nebraska Supreme Court held that a conviction for felony murder and the underlying felony in the same proceeding is a species of impermissible multiple punishment if the Legislature did not designate that multiple sentences should be applied for conviction on both offenses. The court held that there was no affirmative indication in either the felony murder statute or the robbery statute that the Legislature intended that a defendant should be punished independently for both felony murder and the underlying felony upon which it relies. Thus, in McHenry's case, the underlying felony of aiding and abetting attempted robbery merged into a felony murder conviction, and McHenry could not be punished separately. McHenry's sentence on the underlying felony of aiding and abetting robbery was vacated, thereby curing the double jeopardy violation.

Relying upon the court's analysis of Nebraska's felony murder statute, Greer contends that it is not possible to violate Nebraska's burglary statute without also committing the underlying felony. In Greer's case, he contends that the "underlying felony" was first degree assault. First degree sexual assault, as charged in the instant case, is committed by "[a]ny person who subjects another person to sexual penetration and (a) overcomes the victim by force, threat of force, express or implied, coer-

cion, or deception . ... ." Neb. Rev. Stat. § 28-319(1) (Cum. Supp. 1994).

We agree with Greer that under the felony murder statute, it is impossible for a trier of fact to find that a defendant committed felony murder without also finding that he or she committed the underlying offense. See *State v. Nissen*, 252 Neb. 51, 560 N.W.2d 157 (1997). See, also, *State v. White*, 244 Neb. 577, 508 N.W.2d 554 (1993) (to be lesser-included offense, elements of lesser offense must be such that it is impossible to commit greater offense without at same time having committed lesser offense). However, there are significant differences between Nebraska's felony murder statute and Nebraska's burglary statute.

A person commits burglary when he or she willfully, maliciously, and forcibly breaks and enters any real estate or any improvements erected thereon with the intent to commit any felony or with intent to steal property of any value. § 28-507. It is only the proscribed intent that is essential; no actual theft or asportation of property is required, *State v. Sardeson*, 231 Neb. 586, 437 N.W.2d 473 (1989), nor is the commission of any other felony required. Thus, a violation of the burglary statute is possible without the actual commission of another felony or without the actual theft or asportation of property. The theft or other felony referred to in § 28-507, regardless of its nature, is not a lesser-included offense for purposes of double jeopardy analysis, and this assigned error is without merit.

## 7. INEFFECTIVE ASSISTANCE OF COUNSEL

Greer contends that he was afforded ineffective assistance of counsel for the reasons that trial counsel failed to (1) file a motion to suppress until 3 days before trial; (2) object to the affidavit used to support the search warrant and the affidavit used to obtain the order for identifying physical characteristics; (3) challenge the admission of DNA evidence; (4) request a hearing into statements included in the search warrant affidavit as required by *Franks v. Delaware*, 438 U.S. 154, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978); and (5) object at trial when evidence which had been the subject of a motion in limine was introduced.

 Claims of ineffective assistance of counsel raised for the first time on direct appeal do not require dismissal ipso facto; the determining factor is whether the record is sufficient to adequately review the question. *State v. Cody*, 248 Neb. 683, 539 N.W.2d 18 (1995). When the issue has not been raised or ruled on at the trial court level and the matter necessitates an evidentiary hearing, an appellate court will not address the matter on direct appeal. *Id.*

> To sustain a claim of ineffective assistance of counsel as a violation of the Sixth Amendment to the U.S. Constitution, a defendant must show that counsel's performance was deficient and that such deficient performance prejudiced the defense, that is, demonstrate a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different.

*Id.* at 691-92, 539 N.W.2d at 24. Accord *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

The record before this court is not sufficient for this court to adequately review the questions raised. Consequently, we decline to consider this assigned error.

### 8. ILLEGAL SENTENCE

Next, Greer contends that the sentence imposed upon him for the use of a weapon to commit second degree assault conviction (count VII) violated the multiple punishment prohibition of the Double Jeopardy Clause, and as such, was an illegal sentence. Greer argues that because second degree assault, with which he was charged, required the jury to find that he "[i]ntentionally or knowingly cause[d] bodily injury to another person with a dangerous instrument," Neb. Rev. Stat. § 28-309(1)(a) (Reissue 1995), the corresponding use of a weapon to commit a felony conviction and sentence punished him twice for the same act, i.e., using a dangerous instrument.

 The constitutional prohibition against double jeopardy does not apply where two separate and distinct crimes are committed as the result of one and the same act, because the constitutional proscription is directed to the identity of the offense and not to the act. *State v. Stewart*, 219 Neb. 347, 363 N.W.2d

368 (1985). Consequently, multiple punishments can be imposed for the same act without violating the double jeopardy provision of the state and federal Constitutions, where imposition of the multiple punishments is specifically authorized by state statute. *Id.* Therefore, Greer's convictions and sentences for second degree assault and use of a weapon in the commission of second degree assault are not violative of his right to be free from double jeopardy, and this assignment of error is without merit.

### 9. EXCESSIVE SENTENCE

Greer also contends that the sentences imposed upon him were excessive. Because we have reversed Greer's convictions and vacated his sentences for burglary (counts I and IV) and use of a weapon to commit burglary (count V), we need not address the claimed excessiveness of the sentences imposed for those convictions.

First degree sexual assault (count II) is a Class II felony punishable by 1 to 50 years' imprisonment. Neb. Rev. Stat. § 28-105 (Reissue 1995); § 28-319. Greer was sentenced to 25 to 50 years' imprisonment.

Second degree assault (count VI) and first degree false imprisonment (count VIII) are Class IV felonies, each punishable by up to 5 years' imprisonment, a $10,000 fine, or both. Neb. Rev. Stat. § 28-314 (Reissue 1995); § 28-309; § 28-105. Greer was sentenced to 4 to 5 years' imprisonment each for the second degree assault conviction and the first degree false imprisonment conviction.

Use of a weapon to commit first degree sexual assault (count III), use of a weapon to commit second degree assault (count VII), and use of a weapon to commit first degree false imprisonment (count IX), as Greer was charged, are Class III felonies, each punishable by 1 to 20 years' imprisonment, a $25,000 fine, or both. Neb. Rev. Stat. § 28-1205(1) and (2)(a) (Reissue 1995); § 28-105. Greer was sentenced to 3 to 10 years' imprisonment each on the use of a weapon to commit first degree sexual assault conviction (count III) and the use of a weapon to commit second degree assault conviction (count VII). Greer was sentenced to an additional 3 to 5 years' imprisonment for the

use of a weapon to commit first degree false imprisonment conviction (count IX). All of Greer's sentences were ordered to run consecutively, and he was given credit for 538 days served.

Although Greer concedes that each sentence imposed is within the statutory limits and, as such, will not be disturbed on appeal absent an abuse of discretion, see *State v. Earl*, 252 Neb. 127, 560 N.W.2d 491 (1997), he contends that the trial court abused its discretion in failing to order that the sentences be served concurrently, rather than consecutively. Although it is within the trial court's discretion to direct that sentences imposed for separate crimes be served consecutively, *State v. Haynie*, 239 Neb. 478, 476 N.W.2d 905 (1991), Nebraska's use of a weapon statute, § 28-1205, does not permit such discretion in sentencing. Section 28-1205(3) provides that "[t]he crimes defined in this section shall be treated as separate and distinct offenses from the felony being committed, and sentences imposed under this section shall be consecutive to any other sentence imposed."

The sentences imposed upon Greer with regard to first degree sexual assault (count II), use of a weapon to commit first degree sexual assault (count III), use of a weapon to commit second degree assault (count VII), and use of a weapon to commit first degree false imprisonment (count IX) are within the statutory limits, and except where consecutive sentences are statutorily mandated, it is within the trial court's discretion to impose consecutive sentences. We find no abuse of discretion in that these sentences were imposed upon Greer or that the sentences were ordered to run consecutively. Consequently, this assignment of error is without merit as to these counts.

However, second degree assault (count VI) and first degree false imprisonment (count VIII) are Class IV felonies. On June 17, 1997, 1997 Neb. Laws, L.B. 364, was signed by the Governor. See Neb. Rev. Stat. § 29-2204 (Supp. 1997). Section 29-2204, which became operative on July 1, 1998, provides as follows in significant part: "If the criminal offense is a Class IV felony, the court shall fix the minimum and maximum limits of the sentence, but the minimum limit fixed by the court shall not be less than the minimum provided by law nor more than one-third of the maximum term . . . ."

The law is well settled in Nebraska that where a criminal statute is amended by mitigating the punishment, after the commission of a prohibited act but before final judgment, the punishment is that provided by the amendatory act unless the Legislature has specifically held otherwise. *Jones v. Clarke*, 253 Neb. 161, 568 N.W.2d 897 (1997); *State v. Groff*, 247 Neb. 586, 529 N.W.2d 50 (1995); *State v. Schrein*, 247 Neb. 256, 526 N.W.2d 420 (1995); *State v. Randolph*, 186 Neb. 297, 183 N.W.2d 225 (1971), *cert. denied* 403 U.S. 909, 91 S. Ct. 2217, 29 L. Ed. 2d 686; *State v. Bennett*, 2 Neb. App. 188, 508 N.W.2d 294 (1993).

When pronounced, Greer's sentences for second degree assault (count VI) and first degree false imprisonment (count VIII) were not an abuse of discretion by the trial court. However, Greer's sentences could not be final until the mandate of this appeal is issued. See *Bennett, supra*. Therefore, since L.B. 364 is now effective, it must be followed. Because the minimum of Greer's sentences for counts VI and VIII do not comply with L.B. 364, these sentences must be vacated, and we must remand for resentencing on those counts.

## V. CONCLUSION

Because the jury was improperly instructed as to burglary, we reverse Greer's convictions on the two burglary counts (counts I and IV) and the corresponding use of a weapon charge (count V), vacate his sentences on these counts, and remand for a new trial on these counts. The sentences for second degree assault (count VI) and first degree false imprisonment (count VIII) are vacated and remanded to the district court for resentencing. Greer's remaining convictions and sentences are affirmed.

AFFIRMED IN PART, REVERSED AND REMANDED IN PART FOR A NEW TRIAL, AND IN PART SENTENCES VACATED AND REMANDED FOR RESENTENCING.