STATE OF NEBRASKA, APPELLEE, V. DWAYNE GREER, APPELLANT.
596 N.W.2d 296

Filed July 9, 1999.   No. S-97-596.

James R. Mowbray and Kelly S. Breen, of the Nebraska Commission on Public Advocacy, and, on brief, Robin W. Hadfield, for appellant.

Don Stenberg, Attorney General, and Kimberly A. Klein for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, MCCORMACK, and MILLER-LERMAN, JJ.

STEPHAN, J.

## INTRODUCTION

Dwayne Greer appealed his convictions on two counts of burglary, four counts of use of a weapon to commit a felony, and one count each of first degree sexual assault, second degree assault, and first degree false imprisonment. The Nebraska Court of Appeals in *State v. Greer*, 7 Neb. App. 770, 586 N.W.2d 654 (1998), affirmed Greer's convictions for first degree sexual assault and three counts of use of a weapon, but reversed the convictions for the two burglary counts and corresponding use of a weapon charge and remanded those counts for new trial. It also vacated the sentences for second degree assault and first degree false imprisonment and remanded for resentencing on those counts. We granted the State's petition for further review.

## STATEMENT OF FACTS

*State v. Greer, supra*, includes a full factual background of this case. The issues on further review are limited to the jury instruction on the burglary counts and the sentences imposed on the convictions for second degree sexual assault and first degree false imprisonment, and therefore only the facts pertaining to those issues will be related in detail here.

Greer was charged in a nine-count information filed in the district court for Lancaster County, Nebraska. In count I, the State alleged that on or about August 10, 1995, Greer "did willfully, maliciously, and forcibly break and enter any real estate or any improvements erected thereon, located at 1700 'B' Street, Lincoln, Lancaster County, Nebraska, with the intent to commit any felony or with the intent to steal property of any value," in violation of Neb. Rev. Stat. § 28-507(1) (Reissue 1995). In count IV, Greer was charged with the same offense, allegedly committed at the same premises on November 3. The remaining offenses with which Greer was charged were also alleged to have occurred on November 3.

The premises located at 1700 B Street consisted of an old house which had been converted into five apartments. In 1995, three women occupied apartment No. 1, which included part of the main floor and part of the basement of the house. Sometime during the summer of 1995, but prior to August, A.L., one of the women who lived in apartment No. 1, talked briefly with three men who were helping other tenants of the building move. At trial, A.L. identified Greer as one of these men.

At approximately 2:30 a.m. on August 10, 1995, H.S. and P.S., the other two residents of apartment No. 1, answered a knock on the door of their apartment. The caller was an African-American man who identified himself as "Dwayne" and inquired about the woman "with the little red car." The women responded that A.L., who owned a maroon car, was not home. H.S. testified that at this point in time, all doors to the apartment were closed and locked.

Later the same day, H.S. discovered that several items of personal property belonging to her were missing from the apartment. These included a portable stereo, a cellular telephone, and a wallet. H.S. did not observe any signs of forced entry. H.S.

reported the missing items to the police on the same day. The wallet was found a few blocks from the apartment, but the $20 it had contained had been removed. Subsequently, the cellular telephone was recovered during a search of an apartment where Greer and his wife resided, and a stereo matching the description of the one which H.S. had reported missing was recovered from a pawnshop where it had been pawned by Greer's wife.

Sometime between 1 and 2 a.m. on November 3, 1995, P.S. returned to the apartment after spending the evening with friends. A.L. was at the apartment when she arrived. P.S. expected a visitor and therefore left a door to the apartment unlocked. When the individual called to say he would not be coming over, P.S. went to bed without locking the door. A.L. retired at about the same time.

Later in the morning, A.L. was awakened by an African-American man standing by her bed. The man, who was wearing a ski mask, ordered her to go to another part of the apartment, where he sexually assaulted her at knifepoint and stabbed her right thigh. When the man left the apartment, A.L. awakened P.S. and called the police. At approximately 4:35 a.m., about 8 minutes before a police officer received a call dispatching him to A.L.'s apartment in response to her report, this officer observed an African-American man purposefully running through a neighborhood approximately 16 blocks away from 1700 B Street. He reported this information to his sergeant. Later that morning, other officers encountered Greer in that neighborhood. They transported Greer to the police station for questioning, and when he refused their request to voluntarily give blood, saliva, and hair samples, they obtained a court order for such evidence. Forensic studies linked blood found on a pair of jeans which were seized from Greer's apartment to A.L. and identified Greer as the probable source of sperm that was present on a vaginal swab taken from A.L. following the assault.

Following the presentation of evidence at Greer's trial, the jury was instructed that regarding the charge of burglary in count I, the elements of the State's case were as follows:

> 1. That the defendant, Dwayne Greer, did willfully, maliciously and forcibly break and enter real estate or any

improvements erected thereon, located at 1700 "B" Street, Lincoln, Lancaster County, Nebraska;

2. That the defendant did so with the intent to commit any felony or with the intent to steal property of any value; and

3. That the defendant did so on or about August 10, 1995.

With regard to the burglary charge in count IV, the jury was instructed that the elements of the State's case were as follows:

1. That the defendant, Dwayne Greer, did willfully, maliciously and forcibly break and enter any real estate or any improvements erected thereon located at 1700 "B" Street in Lincoln, Lancaster County, Nebraska;

2. That the defendant did so with the intent to commit any felony or with the intent to steal property of any value; and

3. That the defendant did so on or about November 3, 1995.

Further, the jury was instructed in instruction No. 9 that " '[b]reaking and entering' means entering a building by any act of physical force, however slight, including opening a door or unhooking a door fastener." The jury returned verdicts of guilty on all charges.

Greer received sentences of not less than 4 nor more than 5 years' imprisonment for the second degree assault conviction and for the first degree false imprisonment conviction, both of which were Class IV felonies at the time of sentencing. See, Neb. Rev. Stat. § 28-309 (Reissue 1995); Neb. Rev. Stat. § 28-314 (Reissue 1995). During the pendency of Greer's appeal, certain amendments to Neb. Rev. Stat. § 29-2204 (Cum. Supp. 1998) became operative. As amended, this statute requires a court to fix the maximum and minimum limits of a sentence for a Class IV felony, and "the minimum limit fixed by the court shall not be less than the minimum provided by law nor more than one-third of the maximum term." *Id.*

Greer's assignments of error on appeal included the giving of an erroneous jury instruction on the burglary counts, the imposition of an illegal sentence for the offense of use of a weapon to commit second degree assault, and the imposition of exces-

sive sentences. Relying upon *State v. McDowell*, 246 Neb. 692, 522 N.W.2d 738 (1994), the Court of Appeals found reversible error in the fact that the jury was not specifically instructed that the removal of an obstacle to entry is necessary in order for there to be a "breaking," as that term is used in the statute defining burglary. The Court of Appeals also held that although Greer's sentences for the second degree assault and first degree false imprisonment convictions were not an abuse of discretion at the time they were pronounced, they did not comply with § 29-2204 when its amendments became operative on July 1, 1998.

## ASSIGNMENTS OF ERROR

On further review, the State assigns that the Court of Appeals erred in finding that the burglary instruction given was inadequate to state the elements of the offense and that the sentences imposed for the Class IV felonies must be vacated because of changes in the classification statutes.

## STANDARD OF REVIEW

■ In an appeal based upon the claim of an erroneous instruction, the appellant has the burden to show that the questioned instruction was prejudicial or otherwise adversely affected a substantial right of the appellant. *State v. McHenry*, 250 Neb. 614, 550 N.W.2d 364 (1996). Whether a jury instruction given by a trial court is correct is a question of law. *State v. Adams*, 251 Neb. 461, 558 N.W.2d 298 (1997).

■ Statutory interpretation is a matter of law, in connection with which an appellate court has an obligation to reach an independent, correct conclusion irrespective of the determination made by the courts below. *State v. Urbano*, 256 Neb. 194, 589 N.W.2d 144 (1999).

■ A sentence imposed within statutory limits will not be disturbed on appeal absent an abuse of discretion. An abuse of discretion takes place when the sentencing court's reasons or rulings are clearly untenable and unfairly deprive a litigant of a substantial right and a just result. *Id.*

## ANALYSIS

### JURY INSTRUCTION

■ The offense of burglary is defined in § 28-507(1), which states that "[a] person commits burglary if such person willfully,

maliciously, and forcibly breaks and enters any real estate or any improvements erected thereon with intent to commit any felony or with intent to steal property of any value." For more than a century, this court has held that evidence of any act of physical force, however slight, by which an obstruction to the entry of premises is removed is sufficient to prove the essential element of breaking as used in the statutory offense of burglary. *State v. McDowell, supra*; *State v. Tyrrell*, 234 Neb. 901, 453 N.W.2d 104 (1990); *State v. Zemunski*, 230 Neb. 613, 433 N.W.2d 170 (1988); *State v. Sutton*, 220 Neb. 128, 368 N.W.2d 492 (1985); *State v. Classen*, 216 Neb. 323, 343 N.W.2d 749 (1984); *State v. Campbell*, 190 Neb. 394, 208 N.W.2d 670 (1973); *Hayward v. State*, 97 Neb. 9, 149 N.W. 105 (1914); *Ferguson v. State*, 52 Neb. 432, 72 N.W. 590 (1897); *Metz v. State*, 46 Neb. 547, 65 N.W. 190 (1895).

In *State v. McDowell, supra*, we reversed a burglary conviction on the ground that the defendant's admitted act of climbing a fence in order to steal transmission casings from a storage yard did not constitute a breaking as a matter of law because it did not involve the removal of an obstruction to entry. Although specifically noting that this holding made it unnecessary to reach the contention that the trial court erred in not instructing the jury that breaking requires removal of an obstruction to entry, this court stated in dicta, "When burglary is charged, a jury should be instructed that in addition to the use of physical force, however slight, the removal of an obstacle to entry is necessary to find a breaking." *State v. McDowell*, 246 Neb. 692, 701, 522 N.W.2d 738, 744 (1994).

In its instructions to the jury in the present case, the trial court set forth the statutory elements of the offense of burglary and further instructed that the phrase "breaking and entering" as used in such instructions "means entering a building by any act of physical force, however slight, including opening a door or unhooking a door fastener." Greer's attorney affirmatively stated during the instruction conference that he had no objection to this instruction, and his proposed instruction on the burglary count, which the trial court declined to give, contained no specific language regarding removal of an obstruction to entry. The Court of Appeals did not address Greer's failure to object to the instruc-

tion given or his failure to request an alternate instruction containing the language which he contended was erroneously omitted.

■ Absent plain error indicative of a probable miscarriage of justice, the failure to object to a jury instruction after it has been submitted for review precludes raising an objection on appeal. *State v. Flye*, 245 Neb. 495, 513 N.W.2d 526 (1994); *State v. Drinkwalter*, 242 Neb. 40, 493 N.W.2d 319 (1992). However, it is the duty of a trial judge to instruct the jury on the pertinent law of the case, whether requested to do so or not, and an instruction or instructions which by the omission of certain elements have the effect of withdrawing from the jury an essential issue or element in the case are prejudicially erroneous. *State v. Parks*, 253 Neb. 939, 573 N.W.2d 453 (1998); *State v. Al-Zubaidy*, 253 Neb. 357, 570 N.W.2d 713 (1997). Because Greer did not object to the breaking and entering instruction at trial or request an alternate instruction, the issue on appeal is whether the instruction given was so deficient as to constitute plain error, which we have defined as error of such a nature that to leave it uncorrected would result in damage to the integrity, reputation, or fairness of the judicial process. *State v. Hays*, 253 Neb. 467, 570 N.W.2d 823 (1997); *State v. Kula*, 252 Neb. 471, 562 N.W.2d 717 (1997).

■ Jury instructions must be read as a whole, and if they fairly present the law so that the jury could not be misled, there is no prejudicial error. *State v. Brunzo*, 248 Neb. 176, 532 N.W.2d 296 (1995). A trial court generally retains discretion in the wording of jury instructions. *State v. Stahl*, 240 Neb. 501, 482 N.W.2d 829 (1992). However, whenever an instruction from the Nebraska Jury Instructions is applicable and, from a consideration of the facts and prevailing law, the trial court determines that an instruction on a particular subject is appropriate, the instruction in the Nebraska Jury Instructions should be used. *State v. Stahl, supra.* See, *State v. Stueben*, 240 Neb. 170, 481 N.W.2d 178 (1992); *State v. Dush*, 214 Neb. 51, 332 N.W.2d 679 (1983).

NJI2d Crim. 4.4, entitled "Definitions (Terms for Crimes Against Property)," includes the following definition for the phrase "break and enter": "[T]hat is, entered a building by any

act of physical force, however slight, including opening a door or window." NJI 14.10, predecessor to NJI2d Crim. 4.4, defined "breaking and entering" as "any act of physical force, however slight, by which entrance is gained into a public (or private) building." We characterized this as an "accurate statement of the applicable law" in *State v. Bridger*, 223 Neb. 250, 255, 388 N.W.2d 831, 835 (1986). Neither NJI2d Crim. 4.4 nor its predecessor includes a specific reference to removing an obstruction to entry.

In the present case, the trial court modified the pattern instruction slightly by instructing the jury, " 'Breaking and entering' means entering a building by any act of physical force, however slight, including opening a door *or unhooking a door fastener*." (Emphasis supplied.) Both of these examples involve the application of some degree of physical force to remove an obstruction to entry. We have held that the opening of a closed door is a breaking within the meaning of the definition of burglary. *State v. Tyrrell*, 234 Neb. 901, 453 N.W.2d 104 (1990); *State v. Sutton*, 220 Neb. 128, 368 N.W.2d 492 (1985). Unlike *State v. McDowell*, 246 Neb. 692, 522 N.W.2d 738 (1994), the evidence in the present case does not reflect a potential means of entry which did not involve removal of an obstacle. Although it might have been preferable for the trial court to specifically instruct the jury that removal of an obstacle to entry was required to constitute breaking rather than to rely solely upon examples to communicate this concept to the jury, we cannot say that the failure to do so under the circumstances of this case constituted plain error requiring reversal of the burglary convictions. Therefore, we conclude that the Court of Appeals erred in reversing Greer's convictions on the two counts of burglary and one corresponding count of use of a weapon, and we reinstate those convictions.

## EXCESSIVE SENTENCE

In its petition for further review, the State further contends that the Court of Appeals erred in vacating Greer's sentences for one count of second degree assault and one count of false imprisonment in the first degree, and remanding for resentencing pursuant to the amendments to § 29-2204 which became

operative on July 1, 1998. As counsel for the State acknowledged at oral argument, this portion of the Court of Appeals' judgment is consistent with our recent holding in *State v. Urbano*, 256 Neb. 194, 589 N.W.2d 144 (1999), filed subsequent to the State's petition for further review, and is therefore affirmed.

## CONCLUSION

For the reasons stated, we find no plain error in the jury instructions given by the trial court and therefore reverse that portion of the judgment of the Court of Appeals which reversed Greer's convictions on the two burglary counts (counts I and IV) and the corresponding use of a weapon charge (count V). In all other respects, the judgment of the Court of Appeals is affirmed.

AFFIRMED IN PART, AND IN PART REVERSED.

WRIGHT, J., concurring.

I concur in the result. I write separately, however, to address the problems with Neb. Rev. Stat. § 28-507(1) (Reissue 1995), which provides that a person commits burglary if such person willfully, maliciously, and forcibly breaks and enters any real estate or any improvement erected thereon with intent to commit any felony or with intent to steal property of any value. As written, breaking is an essential element of burglary, and in my opinion, it should not be an essential element.

For more than a century, we have tried to define "breaking" in terms of requiring the removal of an obstruction. We have held that evidence of any act of physical force, however slight, by which an obstruction to the entry of premises is removed is sufficient to prove the essential element of "breaking" as used in the offense of burglary. This, in my opinion, has led to some unreasonable and inconsistent results.

For example, opening a closed door is a breaking, *State v. Tyrrell*, 234 Neb. 901, 453 N.W.2d 104 (1990), but walking through an open door is not, *Hayward v. State*, 97 Neb. 9, 149 N.W. 105 (1914). Opening a skylight is a breaking, *State v. Zemunski*, 230 Neb. 613, 433 N.W.2d 170 (1988), but crawling over a closed door and through an open transom is not, *McGrath v. State*, 25 Neb. 780, 41 N.W. 780 (1889). Presumably, opening a gate is a breaking (not yet decided), but crawling over a fence

is not, *State v. McDowell*, 246 Neb. 692, 522 N.W.2d 738 (1994).

If a person climbs over a fence, climbs a drainpipe to the roof, walks over the roof, jumps to a balcony from the roof, and then enters through a door or crawls through an open window on the balcony, burglary has not been committed. If, however, the person opens the gate to the fence and then repeats all of the remaining activities, we would conclude that there has been some force to remove the obstruction, i.e., opening the gate, and that burglary has occurred. Clearly, breaking is not an essential element of the crime of burglary and should be eliminated from § 28-507.

In the case at bar, the victim was awakened by a man standing by her bed. The man was wearing a ski mask, and he ordered her to go to another part of the apartment, where he sexually assaulted her at knifepoint and stabbed her right thigh. If the evidence established that the door to the apartment was open, the man who walked through the door would not have committed the offense of burglary. Based on our decision in *McDowell, supra,* the Nebraska Court of Appeals felt compelled to reverse because the jury was not specifically instructed that the removal of an obstacle to entry is necessary in order for there to be a "breaking," as the term is used in § 28-507.

In *McDowell*, we reversed a burglary conviction on the ground that the defendant's admitted act of climbing the fence in order to steal transmission casings from a storage yard did not constitute a breaking as a matter of law because it did not involve the removal of an obstruction to entry. I do not agree with the conclusion in *McDowell* that crawling over a fence is not removal of an obstruction to the entry of the premises and therefore is not a breaking, but that is the current state of the law. It is the province of the Legislature, not the courts, to amend § 28-507 to eliminate the requirement that there be a breaking as an element of the crime of burglary.

At present, climbing over the newly erected fence at the Governor's mansion with the intent to commit any felony is not burglary. Opening and walking through the gate with the same intent is burglary.

It is because of my disagreement with *McDowell* and the problems above illustrated that I concur in the result.

GERRARD and MILLER-LERMAN, JJ., join in this concurrence.